UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>Cumulus Media Inc., *et al.*, [1]<br><br>Debtors. | Chapter 11<br><br>Case No. 17-13381 (SCC)<br><br>(Jointly Administered)<br><br>Re: Docket Nos. 14, 52, and 53 |

### FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363(b), 363(c)(2), AND 507 (I) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO THE SECURED PARTIES, AND (III) GRANTING RELATED RELIEF

Upon the motion (the "***Motion***")[2] of Cumulus Media Inc. ("***Cumulus***"), Cumulus Media Holdings Inc. ("***Holdings***"), and the other debtors and debtors-in-possession in the above-captioned cases (collectively, with Cumulus, the "***Debtors***"), pursuant to sections 105, 361, 362, 363(b), 363(c)(2), and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "***Bankruptcy Code***"), and Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "***Bankruptcy Rules***"), and Local Rule 4001-2 of the Local Bankruptcy Rules for the Southern District of New York (the "***Local Rules***"), seeking, among other things:

A.     authorization for the Debtors to use Cash Collateral (as defined below) and all other Collateral (as defined below), and any proceeds thereof;

---

[1]    The last four digits of Cumulus Media Inc.'s tax identification number are 9663. Because of the large number of Debtors in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/cumulus. The location of the Debtors' service address is: 3280 Peachtree Road, N.W., Suite 2200, Atlanta, Georgia 30305.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Credit Agreement (as defined below), as applicable.

B.    the granting of adequate protection to the Secured Parties (as defined below);

C.    approval of certain stipulations by the Debtors with respect to the Credit Agreement (as defined below) and the obligations, liens and security interests arising therefrom;

D.    the waiver of (i) the Debtors' right to surcharge the Collateral pursuant to section 506(c) of the Bankruptcy Code; and (ii) any rights of the Debtors under the "equities of the case" exception in section 552(b) of the Bankruptcy Code;

E.    modification of the automatic stay to the extent set forth herein;

F.    scheduling of a final hearing (the "*Final Hearing*"), to be held within twenty-five (25) days of the entry of the order granting the Motion on an interim basis (the "*Interim Order*") to consider entry of a final order (the "*Final Order*" and together with the Interim Order, the "*Orders*") approving the relief granted herein on a final basis; and

G.    the Interim Order [Docket No. 53] having been entered on December 1, 2017; and due and appropriate notice of the Motion, the entry of the Interim Order and the Final Hearing having been provided by the Debtors to the Office of the United States Trustee for Region 2 (the "*U.S. Trustee*"), the holders of the 20 largest unsecured claims against the Debtors (on a consolidated basis), counsel to the Ad Hoc Group of Noteholders, counsel to the Administrative Agent (as defined below), counsel to the ad hoc group of Lenders represented by Arnold & Porter Kaye Scholer LLP (the "*Lender Group*"), the Internal Revenue Service, counsel to the Consenting Equity Holders, the Securities and Exchange Commission, the United States Attorney's Office for the Southern District of New York, the office of the attorney general for the states in which the Debtors operate, and any party that has requested notice pursuant to Bankruptcy Rule 2002; and it appearing that no other or further notice need be provided; and the

2

Court having reviewed the Motion; and the Final Hearing having been held before the Court on [●], 2017; and upon the record made by the Debtors in the Motion, in the *Declaration of John F. Abbot in Support of Chapter 11 Petitions and First Day Motions* (the "**First Day Declaration**") [Docket No. 17], at the hearing to approve the Interim Order, and at the Final Hearing; and the relief requested in the Motion being reasonable, appropriate and in the best interests of the Debtors, their creditors, their estates and all other parties-in-interest in these Chapter 11 Cases (as defined below); and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED,[3] that:

1.      *Disposition.*   The relief requested in the Motion is hereby granted on a final basis, on the terms set forth below.   Any objections to the Motion that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled on the merits.   The Final Order shall become effective immediately upon its entry.

2.      *Jurisdiction and Venue.*   The Court has jurisdiction over these Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.   This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2).   The Court may enter a final order consistent with Article III of the United States Constitution.   Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      *Debtors' Stipulations.*   Subject to the limitations contained in Paragraph 19 below, the Debtors admit, stipulate and agree, for themselves and their estates, as follows:

---

[3]      In accordance with Rule 7052, any proposed finding of fact more properly classified as a proposed legal conclusion shall be deemed as such, and any proposed conclusion of law more properly classified as a proposed factual finding shall also be deemed as such.

(a)    <u>Obligations</u>.

(i)    As of the date of the filing (the "***Petition Date***") of the Debtors' chapter 11 cases (the "***Chapter 11 Cases***"), Cumulus, together with Holdings, and each of Cumulus' wholly-owned direct and indirect domestic subsidiaries that serve as guarantors in connection therewith (Cumulus and such subsidiaries of Cumulus (other than Holdings) are referred to herein collectively as the "***Guarantors***"), were justly and lawfully indebted and liable under that certain Amended and Restated Credit Agreement, dated as of December 23, 2013 (as amended, modified or supplemented prior to the date hereof, and including all exhibits and guarantee, security, fee letters and other ancillary documents executed in connection therewith, the "***Credit Agreement***"), among Cumulus, Holdings, as borrower, JPMorgan Chase Bank, N.A., as administrative agent (the "***Administrative Agent***"), the other agents party thereto, and the banks and other financial institutions party thereto from time to time (the "***Lenders***," and together with the Administrative Agent, such other agents and any affiliate of a Lender to which Obligations are owed, the "***Secured Parties***," and each, a "***Secured Party***"), without defense, challenge, objection, claim, counterclaim or offset of any kind, in the aggregate principal amount of not less than $1,728,614,099.90 in respect of loans and other extensions of credit made, plus accrued and unpaid interest and fees (including commitment fees of not less than $169,863.02 as of the Petition Date), expenses (including any attorneys', accountants', appraisers' and financial advisors' fees and expenses, in each case, that are chargeable or reimbursable under the Credit Agreement), charges, indemnities and other obligations incurred in connection therewith (including any obligations under any "Specified Swap Agreements" and "Specified Cash Management Agreements" (each as defined in the Credit Agreement), in each case to the extent constituting Obligations under and as defined in the Credit Agreement, collectively, the

4

"*Obligations*"), which Obligations were guaranteed on a joint and several basis by all of the Guarantors.

(ii)       No portion of the amounts outstanding under the Credit Agreement or any payments made to the Secured Parties or applied to or paid on account of the Obligations prior to the Petition Date are subject to avoidance, recharacterization, subordination (whether equitable, contractual or otherwise), recovery, attack, effect, recoupment, rejection, reduction, set-off, disallowance, impairment, counterclaim, cross-claim, defense or Claim under the Bankruptcy Code or applicable non-bankruptcy law.

(iii)       The liens and security interests granted to the Secured Parties (the "*Liens*") pursuant to and in connection with the Credit Agreement are: (a) valid, binding, perfected, enforceable, first-priority liens and security interests in the "Collateral" (as defined in the Credit Agreement, the "*Collateral*"); (b) not subject to avoidance, recharacterization, subordination (whether equitable, contractual or otherwise), recovery, attack, effect, recoupment, rejection, reduction, set-off, disallowance, impairment, counterclaim, cross-claim, defense or Claim under the Bankruptcy Code or applicable non-bankruptcy law; and (c) subject and subordinate only to (i) nonavoidable, valid, enforceable and perfected liens and security interests in the assets of the Debtors, as prepetition debtors, that existed on the Petition Date, or that are properly perfected after the Petition Date pursuant to section 546(b) of the Bankruptcy Code, that were permitted liens under the Credit Agreement, and that are not subject to avoidance, subordination, recharacterization or other challenge pursuant to the Bankruptcy Code and that are superior in priority, after giving effect to any existing subordination or intercreditor agreements (the "*Permitted Prior Liens*"), and (ii) the Carve-Out (as defined below).

(iv)    The Revolving Credit Commitments (as defined in the Credit Agreement) and the Issuing Lender's (as defined in the Credit Agreement) obligation to issue letters of credit under the Credit Agreement were permanently terminated as of the Petition Date.

(b)    No Control of Debtors.  None of the Secured Parties control the Debtors or their properties or operations, have authority to determine the manner in which any Debtor's operations are conducted or are control persons or insiders of the Debtors by virtue of any of the actions taken with respect to, in connection with, relating to or arising from the Credit Agreement.

(c)    Cash Collateral.    Other than cash (i) securing the reimbursement obligations with respect to the outstanding letter of credit originally issued on January 27, 2005 by JPMorgan Chase Bank, N.A. for the benefit of Ace American Insurance Company (in which cash JPMorgan Chase Bank, N.A. in its capacity as LC issuer continues to have a first priority lien) (the "*JPM LC Cash Collateral*"), (ii) that is subject to a deposit account control agreement in favor of The Brand Bank Company ("*Brand*") in respect of account number XXX5513 at Brand, (iii) in account number XX1098 at Brand securing the reimbursement obligations with respect to the outstanding letter of credit originally issued on December 21, 2016 for the benefit of OCP Centrum Holding Company, LLC, and (iv) in account number XXXXXXX5722 at U.S. Bank, N.A., all cash and securities of the Debtors (and the proceeds therefrom) as of the Petition Date, including, without limitation, all cash, securities (and the proceeds therefrom) and other amounts on deposit or maintained by the Debtors in any account or accounts with any depository institution (collectively, the "*Depository Institutions*") are subject to valid, perfected, enforceable, first-priority liens under the Credit Agreement and applicable law, for the benefit of the Secured Parties.  All existing cash of the Debtors and all cash proceeds of the Collateral are

6

"cash collateral" of the Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (the "***Cash Collateral***"); *provided*, that the JPM LC Cash Collateral is not Collateral (including Cash Collateral) of the Secured Parties.

(d)    No Claims Against Secured Parties.  No claims or causes of action exist against, or with respect to, the Secured Parties under the Credit Agreement.

(e)    Release.  The Debtors hereby forever, unconditionally and irrevocably release, discharge, and acquit each of the Secured Parties, and each of their respective successors, assigns, affiliates, subsidiaries, parents, officers, shareholders, directors, employees, attorneys, agents, and professionals, past, present, and future, and their respective heirs, predecessors, successors, and assigns (collectively, the "***Releasees***") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, reasonable attorneys' fees), debts, liens, actions, and causes of action of any and every nature whatsoever that exist on the date hereof, whether arising in law or otherwise, and whether or not known or matured, arising out of or relating to, as applicable, the Credit Agreement and/or the transactions contemplated thereunder including, without limitation, (i) any so-called "lender liability" or equitable subordination claims or defenses, (ii) any and all claims and causes of action arising under the Bankruptcy Code, and (iii) any and all claims and causes of action with respect to the extent, validity, priority, perfection, or avoidability of the Liens and the Obligations.  The Debtors further waive and release any defense, right of counterclaim, right of set-off, or deduction to the payment of the Obligations that the Debtors now have or may claim to have against the Releasees, arising out of, connected with, or relating to any and all acts, omissions, or events occurring prior to the Court entering the Final Order.

4.      *Findings Regarding the Use of Cash Collateral*.

(a)      <u>Good and Sufficient Cause</u>.  Good and sufficient cause has been shown for the entry of the Final Order.

(b)      <u>Immediate Need for Use of Collateral</u>.  The Debtors have an immediate need to use the Collateral (including Cash Collateral) on a final basis in order to permit, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with employees, content providers, vendors, suppliers and customers, to make payroll, to make capital expenditures, to satisfy the costs of administration of the Chapter 11 Cases, and to provide for other working capital and operational needs.  The access of the Debtors to sufficient working capital and liquidity through the use of Collateral (including Cash Collateral) is necessary and vital to maximize the Debtors' enterprise value for all constituencies, and to preserve the Debtors' assets for the benefit of their creditors and their estates.

(c)      <u>Consent of the Secured Parties</u>.  To the extent such consent is required, the Secured Parties, by and through the Administrative Agent, have consented to or are deemed to have consented to the Debtors' use of Collateral (including Cash Collateral), subject to the terms of the Final Order.

(d)      <u>Entitlement to Adequate Protection</u>.  The Secured Parties are entitled to the adequate protection provided in the Orders as and to the extent set forth herein pursuant to sections 361, 362 and 363 of the Bankruptcy Code.  The terms of the proposed adequate protection package for the use of the Collateral (including Cash Collateral) are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of the Collateral (including Cash Collateral); *provided*, that nothing in the Orders shall (x) be construed as the affirmative consent by any of

the Secured Parties to the use of Collateral (including Cash Collateral) other than on the terms set forth in the Orders; (y) be construed as a consent by any Secured Party to the terms of any financing or any other lien encumbering the Collateral (whether senior, *pari passu* or junior, not specifically permitted under the Orders); or (z) prejudice, limit or otherwise impair the rights of any of the Secured Parties to seek new, different or additional adequate protection.

(e)     Best Interests.  The Court concludes that entry of the Final Order is in the best interests of the Debtors, their estates and creditors as its implementation will, among other things, allow for access to the liquidity necessary for the continued operation of the Debtors' existing business and further enhance the Debtors' prospects for a successful restructuring.  The terms of the Final Order are fair and reasonable under the circumstances and reflect the Debtors' reasonable exercise of their business judgment.

5.     *Payment from Restricted Sources*.  Notwithstanding anything else in the Orders, the Carve-Out, the Collateral (including Cash Collateral), and the proceeds of the Collateral (collectively, the "***Restricted Sources***") shall not be available for payment of any fees or expenses incurred by any party in connection with (a) the investigation (including discovery proceedings), initiation or prosecution of any claims, causes of action, adversary proceedings suits, arbitrations, proceedings, applications, motions or other litigation of any type (i) adverse to any of the Secured Parties (or any of the affiliates, agents or representatives of the foregoing (each solely in such capacity), or their respective rights and remedies under or in respect of the Credit Agreement or any interim or final order), with respect to adequate protection granted to the Secured Parties; or (ii) challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset to, the obligations and the liens and security interests granted under the Credit Agreement, including, in each case, without limitation, for

9

lender liability or pursuant to sections 105, 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; (b) any purpose that is prohibited under the Bankruptcy Code or the Orders; (c) paying any amount on account of any claims of the Debtors arising before the commencement of these Chapter 11 Cases unless such payments are approved by an order of the Court; or (d) objecting to, contesting, or interfering with, in any way, the Secured Parties' enforcement or realization upon any of the Collateral in accordance with the terms of the Orders once a Termination Event (as defined below) has occurred; *provided*, that, notwithstanding anything to the contrary herein, the Committee (as defined below) may use the Restricted Sources to investigate (i) the claims and liens of the Secured Parties, and (ii) potential claims, counterclaims, causes of action or defenses against the Secured Parties as long as no more than an aggregate of $100,000 of the proceeds of the Restricted Sources may be used for the purposes set forth in the preceding proviso (such amount, the "***Limited Amount***"); *provided*, *further*, that nothing in the Orders shall preclude, limit or impair (i) the Debtors' right to (A) seek non-consensual use of Cash Collateral during the Remedies Notice Period (as defined below) or following any termination of the authorization to use Cash Collateral pursuant to the Final Order, (B) seek to recharacterize any cash payments made hereunder to the Secured Parties on account of the Adequate Protection Obligations as principal payments, or (C) contest whether an Event of Default or Termination Event has occurred or whether or to what extent there has been any Diminution in Value or (ii) the Secured Parties' right to object to any of the foregoing in subsections (i)(A)–(C) of this Paragraph.    Nothing herein shall restrict the right of the Committee's Professionals to seek Court approval or allowance of any fees in excess of the Limited Amount in accordance with an Allowance Order (as defined herein), and all parties in interest reserve their rights to object to the allowance of such fees, costs and expenses of the

Committee's Professionals (including, without limitation, on the basis that the amounts in question exceed the Limited Amount).

6.      *Limitation on Charging Expenses Against Collateral*.  Except to the extent of the Carve-Out, no costs or expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Collateral (including Cash Collateral) pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law or equity, without the prior written consent of the Administrative Agent (acting at the direction of the Required Lenders), and no such consent shall be implied from any other action, inaction, or acquiescence by the Secured Parties, and nothing contained in the Orders shall be deemed to be a consent by the Secured Parties to any charge, lien, assessment or claim against the Collateral under section 506(c) of the Bankruptcy Code or otherwise.

7.      *Use of Cash Collateral*.  (a)  The Debtors are hereby authorized, subject to the terms and conditions of the Final Order (including the Budget, subject to the Permitted Variances (each as defined below)), to use all Cash Collateral for, among other things, (i) the costs of administering the Chapter 11 Cases, including payment of the Adequate Protection Obligations; (ii) any payments authorized by any order of this Court; (iii) the Debtors' ongoing working capital and capital expenditure needs during the pendency of the Chapter 11 Cases; (iv) funding the Carve-Out; and (v) other general corporate purposes; and (b) except on the terms and conditions of the Orders, the Debtors shall be enjoined and prohibited from at any time using the Cash Collateral absent further order of the Court.

8.      *Compliance with Budget*.  The Debtors are hereby authorized to use Cash Collateral pursuant to the Budget, subject to the Permitted Variances.

    (a)    For purposes hereof:

    (i)    "***Budget***," the initial version of which was annexed to the Interim Order as <u>Exhibit A</u>,[4] means a 13-week forecasted operating budget, which forecast shall be in form and substance reasonably satisfactory to the Lender Group.  Beginning on Friday, December 29, 2017 (the "***Initial Test Date***") and on every fourth Friday thereafter (each such four-week period, a "***Test Period***"), the Debtors shall deliver to counsel to the Lender Group and the Administrative Agent a supplement to the then-approved Budget covering a 13-week period that commences with the beginning of the week following the week such supplement is delivered setting forth all forecasted receipts and disbursements of the Debtors and their subsidiaries on a weekly basis for such 13-week period, which shall include similar line items to those set forth in the version of the Budget annexed to the Interim Order as <u>Exhibit A</u>.  Such supplements to the Budget shall become and be deemed to constitute the new Budget if not objected to in writing by the Lender Group, as not being reasonably satisfactory to the Lender Group, within five (5) business days of receipt; *provided*, that the previous Budget shall remain operative pending the resolution of any objection received to the newly delivered Budget.  For the avoidance of doubt, the initial Budget shall be deemed to be in form and substance reasonably satisfactory to the Lender Group, and any supplement to the Budget shall be deemed to be in form and substance reasonably satisfactory to the Lender Group so long as any modifications set forth therein (as compared to the then-effective Budget) do not materially impact the Debtors' ability to consummate the restructuring transactions contemplated by the Restructuring Support Agreement;

---

[4]    Copies of any additional or revised Budgets approved by the Lender Group shall be provided to counsel for the Committee and the U.S. Trustee.

（段落）

(ii)    "*Permitted Variances*" means for each Test Period (with the first Test Period commencing on the Initial Test Date): (A) all variances from the Budget that are favorable to the interests of the Debtors, and (B) any variance from the Budget that is unfavorable to the interests of the Debtors other than (y) a negative variance of 15% or more from the designated "Total Cash Receipts" line item in the Budget, to be tested on a total basis over the applicable Test Period, or (z) a negative variance of 15% or more from the designated "Total Operating Cash Disbursements" line item in the Budget, to be tested on a total basis over the applicable Test Period.  For the avoidance of doubt, the Total Operating Cash Disbursements line item shall exclude (x) any fees, costs and expenses incurred in connection with the Chapter 11 Cases, including any fees and expenses incurred by professionals retained by the Debtors, the Committee, or any of the Secured Parties, (y) any amounts paid in accordance with an order of the Bankruptcy Court, including any orders providing "first day" relief, approving assumption of any executory contracts (and the payment of any related cure amounts), or approving the payment of any other prepetition amounts, and (z) any Adequate Protection Payments (as defined herein).  The results of the Budget variance test for each Test Period shall be delivered to counsel to the Lender Group and the Administrative Agent within five (5) business days following the Debtors' delivery of each proposed supplement to the Budget (each, a "***Budget Variance Report***"); and

(iii)    "*Minimum Liquidity Covenant*" means a covenant to maintain the Debtors' total cash and cash equivalents at or above $30 million, tested every four weeks on the last day of each Test Period, with the first test commencing on the Initial Test Date, and with the Minimum Liquidity Covenant test results provided as part of the Budget Variance Report.

(b)      Notwithstanding anything to the contrary in Paragraph 8(a), the Budget shall not restrict the Debtors' payments on account of (i) all postpetition professional fees and expenses of the Administrative Agent and the Lender Group, subject to Paragraph 12(c) herein; (ii) all reasonable prepetition professional fees and expenses (including legal, financial advisor, appraisal and valuation-related fees and expenses) incurred by the Administrative Agent and the Lender Group, including, without limitation, those incurred in connection with the preparation, negotiation, documentation and court approval of the Motion; and (iii) adequate protection provided to the Secured Parties (including the Adequate Protection Payments), and the Debtors shall use Cash Collateral to pay all amounts pursuant to (i)–(iii) of this Paragraph 8(b).  For the avoidance of doubt, nothing in the Orders shall modify or stay the Debtors' reporting obligations under section 7.1 of the Credit Agreement (other than as specifically modified in this Final Order or other order of the Court), which obligations remain extant during the Chapter 11 Cases.

9.      *Carve-Out.*  For purposes hereof, the "**Carve-Out**" shall mean an amount equal to the sum of (i) all fees required to be paid to the clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code, *plus* interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable and documented fees and expenses incurred by a trustee appointed under section 726(b) of the Bankruptcy Code in an amount not to exceed $75,000 (without regard to the notice set forth in subsection (iii) below); (iii) to the extent allowed by the Court at any time, whether by interim order, procedural order, final order, or otherwise (each, an "**Allowance Order**"), all unpaid fees, costs, and expenses (the "**Professional Fees**") incurred by persons or firms retained by the Debtors or the official committee of unsecured creditors appointed in these Chapter 11 Cases (the "**Committee**") pursuant to sections 327, 328, 363 or 1103 of the Bankruptcy Code (collectively, the

"*Professional Persons*") at any time before or on the date of delivery by the Administrative Agent (at the direction of the Required Lenders) of a Carve-Out Trigger Notice (as defined below),[5] whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice (the "*Pre-Trigger Date Fees*"); and (iv) after the date of the delivery of the Carve-Out Trigger Notice (as defined below) (the "*Trigger Date*"), to the extent incurred after the Trigger Date, and subject in all respects to the entry of an Allowance Order, the payment of Professional Fees of Professional Persons in an aggregate amount not to exceed $4,000,000 (the amount set forth in this clause (iv) being the "*Post-Carve-Out Trigger Notice Cap*").  For purposes of the foregoing, "*Carve-Out Trigger Notice*" shall mean a written notice to the Debtors, the U.S. Trustee, counsel for the Committee, and counsel for the Lender Group delivered by the Administrative Agent (at the direction of the Required Lenders), which notice may be delivered upon the occurrence of a Termination Date, in accordance with the Final Order, stating that the Post-Carve-Out Trigger Notice Cap has been invoked.  Notwithstanding anything to the contrary in the Orders, the Credit Agreement, or otherwise, the liens, security interests, and superpriority claims granted herein (including the Adequate Protection Liens and the Superpriority Claims (each as defined below)), the Liens and any other liens, claims or interests of any person, shall be subject and subordinate to the Carve-Out.

10.    *Waiver of Equities of Case Exception*.  In no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the secured claims of the Secured Parties.

11.    *No Modification of Rights*.  No rights, protections or remedies of the Secured Parties granted by the Orders shall be limited, modified or impaired in any way by: (i)

---

[5]    For purposes of this Final Order, whenever notice is requested or required herein, such notice may be via electronic mail, unless such other form of notice is specifically required.

any actual or purported withdrawal of the consent of any party to the Debtors' authority to continue to use Cash Collateral; (ii) any actual or purported termination of the Debtors' authority to continue to use Cash Collateral; or (iii) the terms of any other order or stipulation related to the Debtors' continued use of Cash Collateral or the provision of adequate protection to any party.

12.     *Adequate Protection of Secured Parties*.  Until the indefeasible discharge or release of the Obligations, the Secured Parties are entitled to, pursuant to sections 361, 362, 363(e), and 507 of the Bankruptcy Code, adequate protection of their interests in the Collateral (including Cash Collateral), in an amount equal to the aggregate diminution in the value of the Secured Parties' valid, perfected and unavoidable prepetition security interests in the Collateral (including Cash Collateral) from and after the Petition Date, for any reason provided for under the Bankruptcy Code, including, without limitation, any such diminution resulting from the sale, lease or use by the Debtors of the Collateral, payment of any amounts under the Carve-Out, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (the "***Diminution in Value***").  To protect the Secured Parties to the extent of any Diminution in Value, the Secured Parties are hereby granted the following (the "***Adequate Protection Obligations***"):

(a)     Adequate Protection Liens.  To the extent of any Diminution in Value from and after the Petition Date resulting from, among other things, the use, sale or lease of the Collateral, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, the Administrative Agent (for itself and for the ratable benefit of the Lenders) is granted, solely to the extent of any Diminution in Value (effective and perfected upon the date of the Interim Order and without the necessity of the execution of any mortgages, security agreements,

pledge agreements, financing statements or other agreements), subject only to the Carve-Out and the Permitted Prior Liens (all such liens and security interests, the "***Adequate Protection Liens***"):

> (i)    valid, binding, continuing, enforceable, non-avoidable and fully-perfected, first-priority postpetition security interests in and liens on all of the Debtors' rights in tangible and intangible assets, including, without limitation, (A) the Collateral and (B) all other prepetition and postpetition property of the Debtors' estates, and all products and proceeds thereof, whether existing on or as of the Petition Date or thereafter acquired, that is not subject to (y) valid, perfected, non-avoidable and enforceable liens in existence on or as of the Petition Date or (z) valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code (collectively, the "***Unencumbered Property,***" and together with the Collateral, the "***Property***") including, without limitation, any and all unencumbered cash, accounts receivable, other rights to payment, inventory, general intangibles, contracts, servicing rights, servicing receivables, securities, chattel paper, owned real estate, real property leaseholds, fixtures, machinery, equipment, deposit accounts, patents, copyrights, trademarks, tradenames, rights under license agreements and other intellectual property, claims and causes of action, and the proceeds of all of the foregoing; *provided*, that the Unencumbered Property shall not include causes of action under sections 544, 545, 547, 548 or 550 of the Bankruptcy Code (collectively, the "***Avoidance Actions***"); *provided, however*, that upon the entry of the Final Order, the Unencumbered Property shall include, and the Adequate Protection Liens shall attach to, any proceeds or property recovered in respect of any Avoidance Action (collectively, the "***Avoidance Proceeds***"); *provided, further*, that such security interests and liens shall not prime Permitted Prior Liens;

> (ii)    valid, binding continuing, enforceable, non-avoidable and fully-perfected, junior priority security interests in postpetition liens on all tangible and intangible assets, including, without limitation, all prepetition and postpetition property of the Debtors' estates, and all products and proceeds thereof, whether now existing or hereafter acquired that is subject to Permitted Prior Liens; and

(b)    <u>Superpriority Claim</u>.  The Secured Parties are granted, solely to the extent of any Diminution in Value, an allowed superpriority administrative expense claim against each Debtor under section 507(b) of the Bankruptcy Code in respect of the Adequate Protection Obligations with priority in payment over any and all administrative expenses of the kind

specified or ordered pursuant to any provision of the Bankruptcy Code (the "***Superpriority Claim***"), subject and subordinate only to the Carve-Out. The Superpriority Claim shall have recourse to and be payable from all of the Debtors' available assets, including, without limitation, the Avoidance Proceeds (but not any Avoidance Actions);

        (c)    <u>Periodic Payments</u>. As additional adequate protection, the Debtors shall pay in cash (A) to the Administrative Agent, for the benefit of the Secured Parties, (1) all accrued and unpaid prepetition interest and fees (including unpaid commitment fees) within five (5) business days of the entry of the Interim Order, and (2) postpetition interest and fees (including any administrative agency fees that come due after the Petition Date, but excluding any commitment fees in respect of the Revolving Credit Commitments) on a monthly basis at the non-default interest rate under the Credit Agreement (calculated as the Eurodollar Rate for a one-month Interest Period, plus 3.25%, subject to a floor of 1.0%) and on the terms otherwise provided in the Credit Agreement (collectively, the "***Adequate Protection Payments***"), which payment obligations shall, for the avoidance of doubt, be deemed an Adequate Protection Obligation hereunder; *provided*, *however*, nothing in the Orders shall affect the Lenders' right to assert (i) the imposition of interest at the default rate on a postpetition basis or (ii) the calculation of the Applicable Margin for the Term Loan using an ABR Rate, in either case if the Restructuring Support Agreement is terminated in accordance with its terms (or the right of the Debtors or any other party in interest to object to such request); and (B) the reasonable and documented fees and expenses (whether such amounts were incurred before or after the Petition Date) of (1) counsel to the Administrative Agent, and (2) the professionals of the Lender Group (Arnold & Porter Kaye Scholer LLP ("***APKS***"), FTI Consulting Inc. ("***FTI***"), Fortgang Consulting, LLC, and Aloise & Associates, LLC (collectively, the "***Lender Group***

*Professionals*," and together with counsel to the Administrative Agent, the "***Secured Party Professionals***"), in each case. subject to the Review Period (as defined below) set forth in this Paragraph 12(c) hereof, and without the necessity of filing formal fee applications (collectively, the "***Lender Group Professionals' Obligations***"), which payment obligations shall, for the avoidance of doubt, be deemed an Adequate Protection Obligation hereunder; *provided, that,* except with respect to the fees and expenses of APKS and FTI, in no event shall the fees and expenses of the Lender Group Professionals incurred postpetition exceed $150,000 in the aggregate, or such higher amount that shall be subject to the prior written consent of the Debtors, such consent not to be unreasonably withheld.  All payments of professional fees, expenses and disbursements authorized under this Paragraph 12(c) shall be made within ten (10) days (which time period may be extended by the applicable professional) (the "***Review Period***") after the receipt by the Debtors, the Committee and the U.S. Trustee of invoices therefor (the "***Invoiced Fees***") and without the necessity of filing formal fee applications.   The invoices for such Invoiced Fees shall include the total aggregate number of hours billed and a summary description of services provided and the expenses incurred by the applicable professional; *provided, however*, that any such invoice may be redacted to protect privileged, confidential or proprietary information.  The Debtors, the Committee and the U.S. Trustee may object to any portion of the Invoiced Fees (the "***Disputed Invoiced Fees***") within the Review Period by filing with the Court a motion or other pleading, on at least ten (10) days' prior written notice to the Secured Parties of any hearing on such motion or other pleading, setting forth the specific objections to the Disputed Invoiced Fees.  The Debtors shall pay (i) any Invoiced Fees that are not Disputed Invoiced Fees within five (5) business days after expiration of the Review Period; and (ii) any Disputed Invoiced Fees within five (5) business days after approval by the Court by a final order

requiring payment of any previously Disputed Invoiced Fees.  Notwithstanding anything herein to the contrary, the Debtors reserve the right to argue that, to the extent that any cash payment made hereunder as adequate protection to the Secured Parties is not allowed under section 506(b) of the Bankruptcy Code, such payment should be recharacterized and applied as payment of principal amounts owed under the Credit Agreement and shall permanently reduce the Secured Parties' prepetition secured claims accordingly, and the Secured Parties reserve the right to object to any such argument.  Notwithstanding anything else herein, but subject, in all respects, to the Debtors' right to seek recharacterization as described in the preceding sentence, the Adequate Protection Payments and the Lender Group Professionals' Obligations are exclusive of, and in addition to, the Secured Parties' Diminution in Value claim, if any; *provided, however,* that any payments on account of Adequate Protection Payments and the Lender Group Professionals' Obligations shall not give rise to any Diminution in Value claim.

13.    *Reservation of Rights Regarding Adequate Protection*.  Under the circumstances and given that the above-described adequate protections are consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Secured Parties; *provided*, that the Secured Parties may request further or different adequate protection, and the Debtors or any other party in interest with standing may contest any such request.

14.    *Perfection of Adequate Protection Liens.*

(a)    <u>Authority to Perfect Liens</u>.  The Administrative Agent (with respect to the Adequate Protection Liens) is hereby authorized (with the consent of the Required Lenders), but not required, to file or record (and to execute in the name of the Debtors, as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) financing

statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over cash or securities, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder.

(b)    Deemed Perfection Without Further Action.    Whether or not the Administrative Agent (with respect to the Adequate Protection Liens) shall, at the direction of the Required Lenders, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over any cash or securities, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and on the date of entry of the Interim Order.    Upon the request of the Required Lenders, the Administrative Agent and the Debtors, without any further consent of any party, are each authorized to take, execute, deliver and file such instruments (in each case, without representation or warranty of any kind) to enable the Administrative Agent to further validate, perfect, preserve and enforce the Adequate Protection Liens.    All such documents will be deemed to have been recorded and filed as of the Petition Date.

(c)    Perfection by Certified Copy of Order.    A certified copy of the Final Order may, at the direction of the Required Lenders to the Administrative Agent or in the discretion of the Administrative Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all applicable filing and recording offices are hereby authorized and directed to accept such certified copy of the Final Order for filing and/or recording, as applicable.    The automatic stay of section

362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit the Administrative Agent to take all actions, as applicable, referenced in this Paragraph 14.

15.    *Preservation of Rights Granted Under The Orders.*

(a)    No Superior or *Pari Passu* Liens.    Other than the Carve-Out and the Permitted Prior Liens, no claim or lien having a priority superior to or *pari passu* with the Adequate Protection Liens or the Superpriority Claims shall be granted or allowed while any of the Adequate Protection Obligations remain outstanding, and the Adequate Protection Liens shall not be: (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code; or (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)    Survival Upon Reversal.    If any or all of the provisions of the Orders are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect: (i) the validity, priority or enforceability of any Adequate Protection Obligations incurred prior to the actual receipt of written notice by the Administrative Agent of the effective date of such reversal, modification, vacation or stay; or (ii) the validity, priority or enforceability of the Adequate Protection Liens and the Superpriority Claims.    Notwithstanding any such reversal, modification, vacation or stay of any use of Cash Collateral, any Adequate Protection Obligations incurred by the Debtors prior to the actual receipt of written notice by the Administrative Agent, as applicable, of the effective date of such reversal, modification, vacation or stay shall be governed in all respects by the original provisions of the Orders, and the Secured Parties shall be entitled to all the rights, remedies, privileges and benefits granted thereunder and hereunder.

(c)    Survival in Successor Cases.    Except as expressly provided in the Orders, the Adequate Protection Liens, the Superpriority Claims and all other rights and remedies of the Secured Parties granted by the provisions of the Orders (including the Adequate Protection Obligations) shall survive, and shall not be modified, impaired or discharged in any successor cases if these Chapter 11 Cases cease to be jointly administered and in any superseding chapter 7 cases under the Bankruptcy Code, and shall continue in full force and effect until the Adequate Protection Obligations are indefeasibly paid in full in cash, as set forth therein.

16.    Termination Events.    The Debtors' right to use the Cash Collateral pursuant to the Orders shall automatically terminate (each, a "*Termination Event*," and the date of any such Termination Event, the "*Termination Date*") without further notice or court proceeding on the earliest to occur of:

(a)    the effective date of a confirmed chapter 11 plan for any of the Debtors occurs;

(b)    the date that is one hundred and eighty (180) days after the Petition Date, if the effective date of a confirmed chapter 11 plan or plans has not occurred by such date;

(c)    the Court enters an order dismissing any of the Chapter 11 Cases without the consent of the Lender Group, which consent shall not be unreasonably withheld;

(d)    the Court enters an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, without the consent of the Lender Group, which consent shall not be unreasonably withheld;

(e)    the Court enters an order appointing a chapter 11 trustee or any examiner with expanded powers relating to the operation of the businesses in any of the Chapter 11 Cases;

(f)    a filing by any Debtor of any motion, pleading, application or adversary proceeding challenging the (i) validity, extent, enforceability, perfection or priority of the Liens or asserting any other cause of action against and/or with respect to the Credit Agreement or any of the Liens; or (ii) the validity or enforceability of any of the Obligations (or the filing by the Debtors of any motion, pleading, application or statement in support of any motion, pleading,

application or adversary proceeding commenced by any third party with respect to the matters referenced in clause (i) or (ii) above);

(g)    the sale of all or substantially all of the assets of the Debtors (except to the extent permitted under the Restructuring Support Agreement), which does not provide for the repayment in full in cash of all Obligations and Adequate Protection Obligations (in each case, measured as of the date of such repayment) upon the consummation thereof; and

(h)    the Debtors' filing of a motion seeking any financing under section 364(d) of the Bankruptcy Code secured by the Collateral that does not require the payment in full of all Obligations and Adequate Protection Obligations (in each case, measured as of the date of such repayment).

In all cases, the Debtors shall promptly provide written notice to the Administrative Agent, the

U.S. Trustee, counsel for the Lender Group, counsel to the Administrative Agent, and counsel to

the Committee of the occurrence of any applicable Termination Event.

17.    <u>Events of Default</u>.  The occurrence of any of the following events shall constitute

an "***Event of Default***" under the Final Order (unless waived in writing by the Administrative

Agent at the direction of the Required Lenders):

(a)    the occurrence of the date that is five (5) business days after written notice to counsel to the Debtors has been provided by counsel to the Lender Group that the Debtors have failed to make any Adequate Protection Payment required by the Orders when due and the outstanding payment is not made within five (5) business days of such written notice of noncompliance;

(b)    the occurrence of the date that is five (5) business days after written notice to counsel to the Debtors has been provided by counsel to the Lender Group that a Budget Variance Report provided to counsel to the Lender Group shows either (i) a variance that is not a Permitted Variance, or (ii) a breach of the Minimum Liquidity Covenant, and such noncompliance is not waived by the Lender Group in writing within five (5) business days of such written notice of noncompliance;

(c)    the occurrence of the date that is five (5) business days after written notice to counsel to the Debtors has been provided by counsel to the Lender Group that the Debtors have failed to comply with any other material term of the Final Order, and such failure is not remedied by the Debtors or waived by the Lender Group in writing within five (5) business days of such written notice of noncompliance;

(d)    the occurrence of the date that is three (3) business days after written notice to counsel to the Debtors has been provided by counsel to the Lender

Group that any of the documents or other information required to be delivered to any of the Secured Parties pursuant to the Final Order is past due, or that any such documents or other information shall contain material misrepresentations, and such failure to deliver information or correct any material misrepresentation is not remedied by the Debtors or waived by the Lender Group in writing within three (3) business days of such written notice of noncompliance;

(e)      the Debtors shall have filed a disclosure statement other than as contemplated by the Restructuring Support Agreement;

(f)      the Debtors shall have filed a plan of reorganization other than as contemplated by the Restructuring Support Agreement;

(g)      the Interim Order ceases to be in full force and effect for any reason other than as a result of entry of the Final Order superseding the Interim Order;

(h)      the Court enters a final order (i) reversing, amending, supplementing, staying, vacating or otherwise modifying the Orders without the consent of the Lender Group or (ii) avoiding or requiring repayment of any material portion of the payments made to the Secured Parties pursuant to the terms thereof;

(i)      the Court enters an order granting relief from the automatic stay imposed by section 362 of the Bankruptcy Code to any entity (other than an entity holding a Permitted Prior Lien) other than the Administrative Agent with respect to any material liens securing the Obligations or the Property (including Cash Collateral) granted under the Orders with respect to any assets of the Company in an amount greater than $2,000,000 without the written consent of the Lender Group, which consent may be withheld in its sole discretion;

(j)      the Debtors (i) create any postpetition lien or security interests or (ii) incur or suffer to exist any material postpetition liens or security interests, in each case other than in the ordinary course of business or in accordance with the terms of the Orders;

(k)      the Orders or any other pleading filed in the Chapter 11 Cases by the Debtors provide for the nonconsensual priming of the Liens without the written consent of the Lender Group, which consent may be withheld in its sole discretion;

(l)      the Debtors shall create, incur or suffer to exist any other claim which is *pari passu* with or senior to the Superpriority Claims;

(m)      the cessation of all or any material part of the Debtors' business operations, considered on a consolidated basis (other than in connection with a sale of assets permitted by the Restructuring Support Agreement or otherwise consented to by the Lender Group); and

(n)    to the extent not addressed above, the occurrence of any "Lender Termination Event" as defined in the Restructuring Support Agreement that results in the termination thereof.

The Debtors shall promptly provide written notice to the U.S. Trustee, counsel to the Lender Group, counsel to the Administrative Agent, and counsel to the Committee of the occurrence of any applicable Event of Default.  Upon the occurrence and during the continuation of an Event of Default and on the fifth business day following the delivery of written notice by the Administrative Agent (at the direction of the Required Lenders) to the Debtors, their counsel, the U.S. Trustee, and counsel to the Committee (the "***Remedies Notice Period***") of the occurrence of such Event of Default, the Event of Default shall, unless otherwise ordered by the Court, immediately mature into a Termination Event.  For the avoidance of doubt, the Remedies Notice Period shall include, but not duplicate, any applicable cure periods set forth herein.  During the Remedies Notice Period, the Debtors shall be permitted to continue to use Cash Collateral (subject to the Budget and the other restrictions set forth in the Orders) and shall be entitled to request a hearing with the Court on an expedited basis to consider any related relief, including whether an Event of Default has occurred or to permit the use of Cash Collateral on a non-consensual basis.

18.    <u>Remedies Upon a Termination Event</u>.    Upon the occurrence of the applicable Termination Date, (i) the Adequate Protection Obligations shall become due and payable, and (ii) the Secured Parties, upon five (5) business days' written notice to counsel to the Debtors, the U.S. Trustee, counsel to the Lender Group, and counsel to the Committee, may (A) setoff amounts in any account of the Debtors maintained with the Administrative Agent or any other Secured Party, as applicable, to the extent necessary for payment of the Adequate Protection Obligations; and (B) exercise the rights and remedies available under, and subject to the terms of, the Credit Agreement, the Orders, or applicable law, including, without limitation,

and with respect to the Administrative Agent, foreclosing upon and selling all or a portion of the

Property granted to the Administrative Agent to collect the Adequate Protection Obligations;

*provided*, *however*, that any Property recovered or applied in connection with the foregoing shall

be subject in all respects to the Carve-Out.   The automatic stay under section 362 of the

Bankruptcy Code is deemed modified and vacated to the extent necessary to permit such actions.

In any hearing regarding any exercise of rights or remedies, the only issue that may be raised by

any party in opposition thereto shall be whether, in fact, the applicable Termination Date shall

have occurred and whether there has been any Diminution in Value, and each of the Debtors

hereby waives any right to seek relief, including, without limitation, under section 105 of the

Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and

remedies of the Secured Parties set forth in the Orders or the Credit Agreement.   The delay or

failure of the Administrative Agent or other Secured Parties, as applicable, to exercise rights and

remedies under the Credit Agreement or the Orders shall not constitute a waiver of their

respective rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a

written instrument executed in accordance with the terms of the Credit Agreement.   Subject to

the Carve-Out, the Administrative Agent shall be entitled to apply the payments or proceeds of

the Property in accordance with the provisions of the Credit Agreement.   Notwithstanding the

occurrence of the Termination Date or anything herein, (x) the Superpriority Claims and the

Adequate Protection Liens shall continue in full force and effect and shall maintain their

priorities as provided in the Orders until all Adequate Protection Obligations shall have been

indefeasibly paid in full in cash; (y) all of the rights, remedies, benefits, and protections provided

to the Secured Parties under the Orders shall survive the applicable Termination Date; and (z) the

Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the

claims, liens and security interests referred to in this paragraph and otherwise in the Orders. For the avoidance of doubt, subject in all respects to the Carve-Out, the rights of the Debtors, the Secured Parties, and the Committee are reserved as to the application or allocation of any cash of the Debtors that is not subject to the Secured Parties' Liens as of the Petition Date, which cash continues to be unencumbered by a Lien (other than by operation of the Orders) on a Termination Date.

19.    *Effect of Stipulations on Third Parties*.

(a)    <u>Binding on the Debtors</u>.    The Debtors' stipulations, admissions, agreements and releases contained in the Orders, including, without limitation, in Paragraph 3 of each of the Orders, shall be binding upon the Debtors in all circumstances and for all purposes.

(b)    <u>Binding on Third Parties</u>. The Debtors' stipulations, admissions, agreements and releases contained in the Orders, including, without limitation, in Paragraph 3 of each of the Orders, shall be binding upon all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in these Chapter 11 Cases (including the Committee) and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors, in all circumstances and for all purposes unless the following three criteria are satisfied:

(i)    <u>Challenge Period</u>.  Such committee or any other party in interest (subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so), in each case, with requisite standing granted by the Court, has timely filed a Challenge Proceeding (as defined below) (subject to the limitations contained herein, including, *inter alia*, in Paragraph 19(c)) by no later than the date that is the earlier of (y) 90 days

after entry of the Final Order; or (z) confirmation of a plan of reorganization or liquidation in any of the Chapter 11 Cases (the "*Challenge Period*").

(ii)    Challenge Proceeding.  A "*Challenge Proceeding*" is an adversary proceeding or contested matter that (A) objects to or challenges the amount, validity, perfection, enforceability, priority or extent of the Obligations or the Liens, or any portion thereof, or (B) otherwise asserts or prosecutes any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses against the Secured Parties or their respective subsidiaries, affiliates, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such (each a "*Representative*," and, collectively, the "*Representatives*") in connection with matters related to the Credit Agreement, the Obligations, the Liens and the Collateral.

(iii)    Final Non-Appealable Order.  There is a final non-appealable order in favor of the plaintiff in any such Challenge Proceeding; *provided*, that any pleadings filed in any Challenge Proceeding shall set forth with specificity the basis for such challenge or claim and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever, waived, released and barred; *provided*, *further*, that nothing contained herein shall preclude or otherwise limit the rights of the Committee or any party to seek to intervene, or to appear and be heard under section 1109(b) of the Bankruptcy Code.

(c)    Failure to File Challenge Proceeding.  If no such Challenge Proceeding is timely and properly filed during the Challenge Period or the Court does not rule in favor of the plaintiff in any such proceeding then: (i) the Debtors' stipulations, admissions, agreements and

releases contained in the Orders, including, without limitation, those contained in Paragraph 3 of each of the Orders, shall be binding on all parties in interest, including, without limitation, the Committee; (ii) the obligations of the Debtors under the Credit Agreement, including the Obligations, shall constitute allowed claims not subject to defense, claim, counterclaim, recharacterization, subordination, offset or avoidance, for all purposes in these Chapter 11 Cases, and any subsequent chapter 7 case(s); (iii) the Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to recharacterization, subordination, avoidance or other defense; (iv) the Obligations and the Liens shall not be subject to any other or further claim or challenge by the Committee, any non-statutory committees appointed or formed in these Chapter 11 Cases or any other party in interest acting or seeking to act on behalf of the Debtors' estates; and (v) any defenses, claims, causes of action, counterclaims and offsets by the Committee, any non-statutory committees appointed or formed in these Chapter 11 Cases, or any other party acting or seeking to act on behalf of the Debtors' estates, whether arising under the Bankruptcy Code or otherwise, against any of the Secured Parties arising out of or relating to the Credit Agreement shall be deemed forever waived, released and barred.   If any such Challenge Proceeding is timely filed during the Challenge Period, the stipulations, admissions, agreements and releases contained in the Final Order, including, without limitation, those contained in Paragraph 3 of the Final Order, shall nonetheless remain binding and preclusive (as provided in Paragraph 19(b)) on the Committee and on any other person or entity, except to the extent that such stipulations, admissions, agreements and releases were expressly and successfully challenged in such Challenge Proceeding as set forth in a final, non-appealable order of a court of competent jurisdiction. Nothing in the Orders vests or confers on any Person (as defined in the Bankruptcy Code),

including the Committee or any non-statutory committees appointed or formed in these Chapter 11 Cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, Challenge Proceedings with respect to the Credit Agreement, the Obligations, the Liens or the Collateral.   Any motion seeking standing shall attach a draft complaint or other pleading that sets forth such claim or cause of action or other Challenge Proceedings, and any claim or cause of action or other Challenge Proceeding not included therein shall be deemed forever waived, released and barred.

20.    *Binding Effect; Successors and Assigns*.   The provisions of the Final Order, including all findings herein, shall be binding upon all parties in interest in these Chapter 11 Cases, including, without limitation, the Secured Parties, the Committee, any non-statutory committees appointed or formed in these Chapter 11 Cases, the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the Secured Parties and the Debtors and their respective successors and assigns; *provided*, that the Secured Parties shall have no obligation to permit the use of the Collateral (including Cash Collateral) or to extend any financing to any chapter 7 trustee, chapter 11 trustee or similar responsible person appointed for the Debtors' estates.   The rights, benefits and protections of the Administrative Agent set forth in section 10 of the Credit Agreement remain in full force and effect as between the Secured Parties.

21.    *Limitation of Liability*.   In determining to permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to the Orders, the Secured

Parties shall not (i) be deemed to be in "control" of the operations of the Debtors; (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; and (iii) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601, *et seq.*, as amended, or any similar federal or state statute).

22.    *Proof of Claim*.  In order to facilitate the processing of claims, to ease the burden upon the Court and to reduce an unnecessary expense to the Debtors' estates, neither the Administrative Agent nor the other Secured Parties will be required to file proofs of claim in the Chapter 11 Cases or successor cases, and the Debtors' stipulations in Paragraph 3 herein shall be deemed to constitute a timely filed proof of claim.  Any order entered by this Court in relation to the establishment of a bar date for any claim (including without limitation, administrative claims) in any of the Chapter 11 Cases or successor cases shall not apply to the Secured Parties with respect to the Obligations and the Adequate Protection Obligations.   Notwithstanding the foregoing, the Administrative Agent, on behalf of itself and the Secured Parties, is hereby authorized and entitled, at the direction of the Required Lenders, to file (and amend and/or supplement, as it sees fit) in the Debtors' lead Chapter 11 Case—*In re Cumulus Media Inc.*, (Case No. 17-13381)—a single master proof of claim in the Chapter 11 Cases for any claims arising under the Credit Agreement and the Orders (the "***Master Proof of Claim***").  Upon the filing of the Master Proof of Claim (if any), which shall be deemed asserted against each of the Debtors, the Secured Parties and each of their respective successors and assigns, shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claims (which names may be redacted in the publicly filed version of the Master Proof of Claim)

against each of the Debtors of any type or nature whatsoever with respect to the Credit Agreement and the Orders, and the claim of each Secured Party (and each of its respective successors and assigns), named in the Master Proof of Claim shall be treated as if such entity had filed a separate proof of claim in each of these Chapter 11 Cases. The Master Proof of Claim, if filed, shall not be required to identify whether any Secured Party acquired its claim from another party and the identity of any such party or be amended to reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from the transfer of all or any portion of such claims. The provisions of this Paragraph 22 and the Master Proof of Claim are intended solely for the purpose of administrative convenience. The Master Proof of Claim, if filed, shall not be required to attach any instruments, agreements or other documents evidencing the obligations owing by each of the Debtors to the applicable Secured Parties, which instruments, agreements or other documents will be provided upon written request to counsel to the Administrative Agent.

23.    *Effectiveness*.    The Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.    Notwithstanding Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules, any Local Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, the Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of the Final Order.

24.    *Payments Free and Clear*.    Any and all payments or proceeds remitted to the Administrative Agent or the Secured Parties pursuant to the provisions of the Orders or any subsequent order of this Court, subject to (i) any recharacterization of such proceeds or payments as described in Paragraph 12(c) and (ii) Paragraph 19(b) of the Orders, shall be irrevocable,

received free and clear of any claim, charge, assessment or other liability, including, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) and 552(b) of the Bankruptcy Code (whether asserted or assessed by, through or on behalf of the Debtors).

25.    *Brand Reservation.*    Notwithstanding any other provision of this Final Order, for so long as the Brand LC (as defined below) and/or any related reimbursement obligations owed to Brand remain outstanding, nothing in this Final Order shall grant any party (i) the right to use cash in account number XX1098 (the "Brand Collateral Account") at Brand securing the reimbursement obligations with respect to the outstanding letter of credit originally issued on December 21, 2016 for the benefit of OCP Centrum Holding Company, LLC (the "Brand LC") or (ii) any lien or claim with respect to the Brand Collateral Account that is senior to or *pari passu* with any lien or right of setoff held by Brand in the Brand Collateral Account. For the avoidance of doubt, but subject in all respects to paragraph 19, upon termination of the Brand LC and payment in full of all Obligations (as defined in the Letter of Credit Agreement between Brand and Holdings dated December 21, 2016), the cash in the Brand Collateral Account shall constitute Cash Collateral of the Secured Parties.

26.    *Headings*.    Paragraph headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting the Final Order.

27.    *Bankruptcy Rules*.    The requirements of Bankruptcy Rules 4001, 6003 and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

28.    *Necessary Action*.    The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of the Final Order.

29.     *Retention of Jurisdiction*.  The Court shall retain jurisdiction to enforce the provisions of the Final Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan for any one or more of the Debtors.

30.     *Final Order Governs*.  In the event of any inconsistency between the provisions of the Interim Order and the Final Order, the provisions of the Final Order shall govern.

Dated:   December 21, 2017
         New York, New York

/S/ Shelley C. Chapman
THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE