UNITED STATES BANKRUPTCY COURT
SOUTHERN DISRICT OF NEW YORK
------------------------------x
In re

CUMULUS MEDIA INC., et al.,

                   Debtors.

------------------------------x

Chapter 11 Case No.
17-13381 (SCC)

Jointly Administered
Objection Deadline: March 23, 2018
Hearing Date: April 12, 2018

## OBJECTION OF THE U. S. SECURITIES AND EXCHANGE COMMISSION TO CONFIRMATION OF THE DEBTORS' FIRST AMENDED JOINT PLAN OF REORGANIZATION

      The U.S. Securities and Exchange Commission (the "Commission"), a statutory party to these proceedings[1] and the federal agency responsible for regulating and enforcing compliance with the federal securities laws, objects to the confirmation of the Debtors' First Amended Joint Plan of Reorganization (the "Plan") filed by Cumulus Media Inc. ("Cumulus") and its affiliated debtors (collectively, the "Debtors"), dated February 12, 2018. In support of its objection, the Commission respectfully states as follows:

### INTRODUCTION

      As a general matter, nondebtor third party releases contravene Section 524(e) of the Bankruptcy Code, which provides that only debts of the debtor are affected by the Chapter 11 discharge provisions. Such releases have special significance for public investors because they enable nondebtors to benefit from a debtor's bankruptcy by obtaining their own releases with respect to past misconduct, including violations of the

---

[1] As a statutory party in corporate reorganization proceedings, the Commission "may raise and may appear and be heard on any issue". 11 U.S.C. §1109(a).

1

federal securities laws or breaches of fiduciary duty under state law. While such releases may be allowed in exceptional circumstances, those circumstances are not present here.

In the Second Circuit, nonconsensual releases are only permitted in "rare cases" where the injunction is important to the debtor's reorganization. Otherwise, third party releases of non-debtors may be allowed if they are "consensual." Courts in this district have stated that inaction cannot be considered consent. Therefore, under the facts of this case, the releases are not "consensual," nor do they meet the high standard for allowable nonconsensual releases in the Second Circuit.

The releases should be deleted from the Plan, or, alternatively, the Plan should be amended to state that the releases will not bind: (i) shareholders who are deemed to reject the Plan; and (ii) unsecured creditors who fail to return a ballot.

## BACKGROUND

On November 30, 2017, the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York. The Debtors are in the radio broadcasting business, and the company operates its business through two business segments: (i) the radio station segment, which owns and operates 446 radio stations across the country; and (ii) the radio network segment, which syndicates content and services to approximately 8,000 other radio stations. *Disclosure Statement for First Amended Joint Plan of Reorganization ("Disclosure Statement")* at 15-16. Cumulus is a publicly-traded company that was traded on the NASDAQ Stock Market LLC ("NASDAQ") until November 20, 2017, when it was delisted by the NASDAQ and began trading on the OTCQX Markets under the symbol CMLS.

## A. The Disclosure Statement and Plan

Before filing for bankruptcy protection, the Debtors negotiated a restructuring support agreement, dated November 29, 2017 (the "RSA"), with approximately 71% of the Debtors' secured term lenders (the "Consenting Term Lenders"),[2] and the Consenting Equityholders.[3] *Id.* at 31. The Disclosure Statement and Plan incorporate the terms of the RSA and restructure the Debtors' balance sheet by converting debt into equity in the Reorganized Debtors. Specifically, in exchange for the term loan lenders' claims, they will receive interests in a new $1.3 billion exit facility and approximately 83.5% of the equity in the Reorganized Debtors. *Id.* at 1-2. The general unsecured creditors, including the 7.75% senior noteholders (the "Noteholders"), will share pro rata in a distribution of approximately 16.5% of the equity in the Reorganized Debtors. This constitutes a 6-13% distribution on general unsecured claims.[4] Shareholders, who will not receive a distribution under the Plan, are deemed to reject the Plan and are not entitled to vote. *Id.* at 2, 13-14.

Article VIII.E. of the Plan (the "Releases") provides for third party releases in favor of the Debtors, Reorganized Debtors, Consenting Term Loan Lenders, Creditor Agreement Agent, Consenting Equityholders, the Official Committee of Unsecured Creditors (the "Creditors' Committee"), the members of the Creditors' Committee, and, with respect to each entity, its current and former officers, directors, predecessors, successors, assigns,

---

[2] As of the bankruptcy filing, the outstanding term loan has a value of approximately $1.7 billion. *Id.* at 24-25.
[3] The Consenting Equityholders are the holders of interests in the Company that are party to the RSA. *Id.* at 31; *Plan* at 4.
[4] The senior notes are 7.75% senior unsecured notes due 2019, and the aggregate general unsecured claim for the senior notes is approximately $637 million. The Debtors estimate that other general unsecured claims total approximately $45 million, not including convenience class claims estimated at $2 million. *Disclosure Statement* at 12-15.

3

professionals and others (collectively, the "Releasees").[5] *Plan* at 12, 44. The Releases include the release by creditors and shareholders of numerous claims and causes of action against the Releasees, including a wide range of other obligations that relate to the Debtors, other than liability for acts determined by a final order to have constituted fraud, gross negligence and willful misconduct. *Id.* at 44.

### B. Release Opt-Out Procedures

The Disclosure Statement and Plan provide that, if shareholders and creditors do not opt-out of the Releases, they will be bound.[6] *Disclosure Statement* at 106. Because shareholders are deemed to reject the Plan, they will not receive a ballot, but will instead have to opt-out pursuant to the instructions on a "Notice of Non-Voting Status and Optional Release Opt-Out Election Form." *Id.*[7] Unsecured creditors can opt-out of the Releases on their ballots. But if they fail to return the ballots, they are still bound.

## DISCUSSION

### I. The Releases are not consensual and do not meet the standards to be approved as nonconsensual releases.

#### A. The Releases are not consensual.

Section 524(e) of the Bankruptcy Code addresses the scope of the bankruptcy discharge and states, in relevant part, that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such

---

[5] Further, Article VIII of the Plan seeks the approval of the releases pursuant to Bankruptcy Rule 9019.
[6] Pursuant to the Plan, "Releasing Parties" are defined to include: "…(j) all Holders of Claims and Interests who vote to accept the Plan; (k) all Holders of Claims and Interests entitled to vote on the Plan who abstain from voting on the Plan and do not elect on their Ballot to opt out of the of the Third-Party Release; (l) all Holders of Claims and Interests entitled to vote on the Plan who vote to reject the Plan but do not elect on their Ballot to opt-out of the Third-Party Release; (m) all other Holders of Claims and Interests who are deemed to reject the Plan and do not elect to opt-out of the Third-Party Release…." *Plan* at 12.
[7] Attached as an exhibit to the *Order Approving the Adequacy of the Disclosure Statement and Related Relief,* Exh. A, Exh. 3(b),(c),(d),(e), 4(e),(f) Docket no. 416, is the Notice of Non-Voting Status and Optional Release Opt-Out Election Form that the Debtors propose to send to all shareholders and the ballots the Debtors propose to send to unsecured creditors.

4

debt." 11 U.S.C. § 524(e). The Bankruptcy Code contemplates that a discharge only affects the debts of those submitting to its burdens. Nonetheless, releases in favor of nondebtors in Chapter 11 cases have been allowed in this Circuit if the affected parties have individually *consented* to them, and case law addresses the manner in which valid consent can be established. For example, a number of courts in this Circuit have determined that a vote in favor of a plan constitutes consent to such plan's nondebtor releases. *See, e.g., In re Metromedia Fiber Network, Inc.,* 416 F.3d 136, 142 (2d Cir. 2005) ("[n]ondebtor releases may also be tolerated if the affected creditors consent.") *citing In re Specialty Equipment Cos.*, 3 F.3d 1043, 1047 (7th Cir. 1993) (holding that a consensual release "binds only those creditors voting in favor of the plan of reorganization"); *Adelphia Comm'ns Corp.*, 368 B.R. 140, 268 (Bankr. S.D.N.Y. 2007) (holding that consensual third party releases may be acceptable where the release is appropriately disclosed, and that consent can be established by a vote in favor of the plan); *Oneida, Ltd.*, 351 B.R. 79, 94 (Bankr. S.D.N.Y. 2006) (holding that the releases in the plan were consensual because the affected creditors consented by affirmatively checking a box on their plan ballots indicating their willingness to grant the releases) *citing In re Metromedia Fiber Network, Inc.,* 416 F.3d at 142.

With respect to creditors that abstain from voting in this case, their inaction should not constitute consent to the Releases. *See In re SunEdison, Inc.*, 576 B.R. 453, 461 (Bankr. S.D.N.Y. 2017) (court held creditor silence did not signify consent, because silence may have been due to meager recovery of less than 3%); *See also In re Specialty Equipment Cos.*, 3 F.3d 1043, 1047 (7th Cir. 1993) (the consensual release "binds only those creditors voting in favor of the plan of reorganization….a creditor who votes to

5

reject the Plan or abstains from voting may still pursue any claims against third party nondebtors"); *In re Washington Mutual, Inc.*, 442 B.R. 314, 355 (Bankr. D. Del. 2011) ("Failing to return a ballot is not a sufficient manifestation of consent to a third party release").

"Courts generally apply contract principles in deciding whether a creditor consents to a third party release." *In re SunEdison, Inc.*, 576 B.R. at 458 *citing In re Washington Mutual, Inc.*, 442 B.R. at 352. Under New York law, "[a]n offeror has no power to transform an offeree's silence into acceptance when the offeree does not intend to accept the offer." *Id. quoting Karlin v. Avis*, 457 F.2d 57, 62 (2d. Cir. 1972) cert denied, 409 U.S. 849 (1972). New York courts have recognized three exceptions to this rule: "[a]ssent by silence will arise where (1) it is supported by the parties' ongoing course of conduct…(2) the offeree accepts the benefits of the offer despite a reasonable opportunity to reject them, and understands that the offeror expects compensation…or (3) the offeror has given the offeree reason to understand that silence will constitute acceptance and the offeree in remaining silent intends to accept the offer [citation omitted] Under the last exception, silence operates as assent because the silence is misleading, and the exception does not apply absent some element of deception or dishonesty." *Id. at 459 citing Weiss v. Macy's Retail Holdings Inc.,* 265 F.Supp. 3d 358, 363-4 (S.D.N.Y. 2017). Here, where there is no identified duty to speak, silence in the form of failure to return a ballot should not be considered consent. Moreover, with respect to shareholders, who will only receive a Notice because they are deemed to reject the Plan and will receive no distribution, they also have no duty to speak and thus a failure to return the Notice does constitute consent.

While debtors in this district have argued that a variety of different mechanisms, including opt-out provisions, are sufficient to demonstrate consent,[8] it is the Commission's view that releases should be considered consensual only if the affected parties provide affirmative consent. If a party is not getting any consideration and is deemed to reject the plan, that party should not be bound by a release, consensually or nonconsensually. Specifically, under the facts of this case, shareholders are not getting a distribution under the Plan and are deemed to reject the Plan, and therefore, they should be deemed to reject the Release. *See In re Chassix Holdings*, 533 B.R. 64, 81 (Bankr. S.D.N.Y. 2015), ("[a]s to creditors and interest holders who were **deemed to reject** the Plan (and therefore were given no opportunity to vote or to 'opt in' to the releases): it would defy common sense to conclude that those parties had 'consented' to the releases."); *See also In re Calpine Corp.*, Case No. 05-602000, 2007 WL 4565223, at *18 (Bankr. SDNY 2007) (the confirmation order included clarifying language that the releasing parties "by definition, does not include Holders of Claims and Interests who are not entitled to vote in favor of or against the Plan"); *In re Indianapolis Downs*, LLC, 486

---

[8] *See In re Sabine Oil & Gas Corp., 555 B.R.180, 194* (Bankr. S.D.N.Y. 2016) (Plan provided for a consensual "third party release by holders of claims or interests who did not elect on their ballot to opt out of such release" and for nonconsensual releases in favor of certain lenders that made a substantial contribution); *In re BCBG Max Azria Global Holdings LLC* No. 17-10466 *Docket no. 624* (Bankr. S.D.N.Y. 2017) (this Court found that the releases were consensual where creditors and interest holders could opt out on the ballot, and that the release parties provided material contribution to satisfy the *Metromedia* standard); *In re Genco Shipping & Trading Ltd.*, 513 B.R. 233, 271 (Bankr. S.D.N.Y. 2014) (Court permitted the releases with respect to any affected party that consented or was deemed to have consented pursuant to the Plan ballot, which included "those parties who voted in favor of the Plan and those who voted to reject the Plan but failed to opt out from granting the release provisions"); *In re DBSD N. Am., Inc.*, 419 B.R. 179 at 217-219 (Bankr. S.D.N.Y. 2009) (court held that creditors had consented to the release in the exculpation provision where the creditor either voted to accept the plan or where the ballot clearly set forth in capitalized and bold font that a vote to accept the plan or abstention from voting without opting out constitutes assent; creditors that voted to reject the plan did not consent). Whether a release is consensual, depends on the facts of each case. Here, releases by creditors that fail to return a ballot or shareholders that are deemed to reject the Plan are nonconsensual, except for those voting in favor of the Plan or who are a party to the RSA.

7

B.R. 286, 305 (Bankr. Del. 2013)("the third party release provision does not apply to any party that is deemed to reject the Plan or any party who opts out of granting the release by checking the appropriate box on the Ballots").[9]

### B. The Releases do not meet the standards to be approved as nonconsensual releases.

In the Second Circuit, nonconsensual nondebtor third party releases have been allowed only in "rare cases" when "the injunction plays an important role in the debtor's reorganization." *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 141(2d Cir. 2005)(*quoting SEC v. Drexel Burnham Lambert Group, Inc.* (*In re Drexel Burnham Lambert Group, Inc.*), 960 F.2d 285, 293 (2d. Cir. 1992)). Such "rare" cases include situations where "(i) the estate received substantial contribution, (ii) the enjoined claims were 'channeled' to a settlement fund rather than extinguished, (iii) the enjoined claims would directly impact the debtors' reorganization by way of indemnity or contribution, or (iv) the plan otherwise provided for the full payment of enjoined claims." *Oneida, Ltd.*, 351 B.R. at 94, *citing Metromedia*, 416 F.3d at 142.

Here, it is clear that the Releases do not meet this standard. There is no evidence that this is one of the "rare" cases in which the Releases play an important role in the Debtors' reorganization. First, there is no showing that the estate received substantial consideration from all of the Releasees in exchange for the Releases. Second, the enjoined claims are not being channeled to any kind of settlement fund, nor are they

---

[9] Some judges in this district have referenced the opt-out procedure in the class action context when considering the opt-out procedure used by debtors who assert that claim and interest holders that do not opt-out of third party releases in bankruptcy cases have consented to such releases. However, there is a difference between opting out of a class action and opting out of a third party release, when the claimant is not getting anything. In a class action, the class member is a plaintiff who will be getting something from the litigation, if it is successful. Here, the shareholders are getting nothing, and will be bound to give up something (not get something) if they do not opt-out.

otherwise provided for by the Plan. In fact, the shareholders will not receive any consideration from the Releasees for the Releases and should not be bound by the Releases whether consensual or nonconsensual. And the distributions to the general unsecured creditors appear to be simply a function of the mechanics of the Plan, not payments in exchange for the Releases.

Moreover, the lack of consent and consideration is fatal to any argument the Debtors may make that the Releases should be approved pursuant to Bankruptcy Rule 9019 as a settlement of the claims released.[10] In determining whether a settlement should be approved under Rule 9019 as fair and equitable, courts in this Circuit consider a number of factors including the following: (i) "the paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement"; (ii) "the nature and breadth of releases to be obtained by officers and directors"; and (iii) "the extent to which the settlement is the product of arm's length bargaining." *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007) (internal quotation marks omitted). Here, shareholders will receive nothing under the Plan, unsecured creditors are receiving only approximately 6-13% on their claims, and the affirmative consent of the shareholders and the creditors to the Releases is

---

[10] The Releases include the following language:
    Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third Party Release is: (1) essential to the Confirmation of the Plan; (2) given in exchange for the good and valuable consideration and substantial contributions provided by the Released Parties; (3) a good-faith settlement and compromise of the Claims released by the Third Party Release; (4) in the best interests of the Debtors and their Estates; (5) fair, equitable, and reasonable; (6) given and made after due notice and opportunity for hearing; and (7) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third Party Release.

not required. The Releases are broad and there is no indication that shareholders or creditors had a voice in drafting the Plan. Under these circumstances, the Releases do not meet the standard for approval under Rule 9019.

### C. The Releases violate the best interest test.

Under the facts of this case, the Plan violates the Bankruptcy Code's best interest test. Since shareholders will receive no distribution under either Chapter 11 or Chapter 7, but they would retain the various claims described in the Releases in a Chapter 7 case, the Plan violates the best interest test under 11 U.S.C. 1129(a)(7)(A)(ii), which renders the Plan unconfirmable. *See In re SunEdison, Inc.*, 576 B.R. at 457, n 4.

Section 1129(a)(7) establishes a "floor" with respect to the level of recovery to which creditors and shareholders are entitled. Where claims are being released under the Plan but would be available for recovery in a Chapter 7 case, the released claims must be considered as part of the analysis under 1129(a)(7). *In re Washington Mutual Inc.*, 442 B.R. at 359-60. Here where shareholders will receive nothing under the Plan, they will fare worse under Chapter 11 because they are also forfeiting various claims pursuant to the Releases.

### II. The Court may not have jurisdiction to approve the Releases.

Bankruptcy courts are courts of limited jurisdiction. While the Releases appear to be intended to be limited to claims relating to the Debtors, to the extent that the broad language nonetheless captures unrelated claims, Second Circuit case law suggests that a bankruptcy court may lack subject matter jurisdiction to approve the Releases. *See In re Tronox Inc.*, 855 F.3d 84, 101 n.22 (2d Cir. 2017) ("[A] bankruptcy court is without jurisdiction to enjoin claims against nondebtors that are not derivative of the debtor's

10

wrongdoing."); *Johns-Manville Corp. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.)*, 517 F.3d 52, 66 (2d Cir. 2008), *rev'd & remanded on other grounds sub nom. Travelers Indem. Co. v. Bailey,* 557 U.S. 137 (2009); *accord In re Dreier LLP*, 429 B.R. 112, 132 (Bankr. S.D.N.Y. 2010).

## CONCLUSION

The Court should strike the Releases from the Plan or, alternatively, the Plan should be amended to state that neither shareholders who are deemed to reject the Plan nor unsecured creditors who fail to return a ballot will be bound by the Releases.

WHEREFORE, for the reasons stated above, the Commission respectfully requests that the Court enter an order denying confirmation of the Plan.

Dated: New York, New York
       March 23, 2018

                                                 UNITED STATES SECURITIES AND
                                                 EXCHANGE COMMISSION

                                                 By: /s/ Patricia Schrage
                                                 Patricia Schrage
                                                 Senior Bankruptcy Counsel
                                                 New York Regional Office
                                                 Brookfield Place, 200 Vesey St., Suite 400
                                                 New York, New York 10281
                                                 Phone: (212) 336-1100
                                                 Fax: (212) 336-1348
                                                 Schragep@sec.gov

Of Counsel: Alistaire Bambach
                Morgan Bradylyons