PENACHIO MALARA LLP
Counsel to WGH Communications, Inc.
245 Main Street
Suite 450
White Plains, NY  10601
(914) 946-2889

Bronson Law Offices, PC
480 Mamaroneck Avenue
Harrison, NY   10605
(914) 827-5238

UNITED STATES BANKRUPTCY
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------
In re:                                                                         Chapter 11

CUMULUS MEDIA INC., et al.,                                  Case No. 17-13381 (SCC)

                                            Debtors.                          (Jointly Administered)

-------------------------------------------------------X

# OBJECTION TO THE DEBTOR'S CHAPTER 11 PLAN

       WGH Communications, Inc., ("WGH") pursuant to 11 U.S.C. §§ 105 and 1129, and Fed. R. Bankr. P. 2002, hereby files this Objection to Confirmation of Debtors' Joint Chapter 11 Plan of Reorganization [ECF No. 446] (the "Plan")[1] filed by Cumulus Media Inc. et al., and states as follows:

**Background**

       1.       On November 29, 2017 (the "Petition Date"), each of the above captioned debtors (the "Debtors") commenced these cases (the "Chapter 11 Cases") by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

       2.       The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Court entered an order authorizing the joint administration and procedural consolidation of the chapter 11

1

cases pursuant to Bankruptcy Rule 1015(b).

3. Prior to the commencement of these Chapter 11 Cases, the Debtors were engaged in efforts to restructure their obligations outside of Chapter 11. Negotiations were unsuccessful. WGH believes that the failure to achieve an out of Court restructuring was largely because current management ("Management') acted in a manner designed to enhance their compensation package rather than promote the interests of creditors and equity holders.

4. On February 21, 2018, the Debtors filed the Plan. Thereafter, a Plan Supplement was filed (the "Plan Supplement").

**Objections**

5. For the reasons set forth below, WGH preliminarily objects to confirmation of the Plan and reserves the right to supplement this objection. The Committee has engaged in extensive discovery and, subject to Court approval, has or will file objections under seal. As an individual creditor, WGH is not privy to the vast amount of financial information that the Committee holds. As such, WGH reserves its rights to supplement this objection and/or join or support the Committee objection.

6. The Plan does not satisfy Section 1129(a)(1) of the Bankruptcy Code which requires that a plan comply with the applicable provisions of Title 11.

7. The Plan is not proposed in good faith in violation of § 1129(a)(3).

8. The Plan does not clearly set forth the compensation packages offered to Management in contravention of § 1129(a)(5) and, depending upon the terms, may violate the "business judgment rule."

9. The exculpation clause is overbroad and improperly extends to parties who are not estate fiduciaries.

### The Plan Does not Comply with Section 1129(a)(5)

10. Section 1129(a)(5) pertains to management of the reorganized Debtors. It requires disclosure of the identity and affiliations of proposed management, that the appointment or continuation of management be consistent with the interests of creditors and equity holders, and that the compensation of any insider be disclosed. 11 U.S.C. § 1129(a)(5).

11. Here, the Debtors have failed to establish that the continuance of Management is in the best interests of the creditors and equity holders. In fact, WGH believes that Management, who sought excessive compensation in this case, acted in their own interests by failing to restructure outside of Chapter 11. Rather, they chose to seek relief under Chapter 11 which, upon information and belief, would make a more attractive compensation plan available to them than under the terms of a restructuring.

12. Moreover, the terms of compensation are not fully disclosed in the Plan or the Plan Supplement. As such, WGH cannot readily evaluate whether the proposed compensation complies with the "business judgment rule" which generally governs compensation issues.

13. "The business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interest of the company.' " *Integrated Resources*, 147 B.R. 650, 656 (S.D.N.Y.1992). This presumption "shields corporate decision-makers and their decisions from judicial second-guessing when the following elements are present: '(1) a business decision, (2) disinterestedness, (3) due care, (4) good faith, and (5) according to some courts and commentators, no abuse of discretion or waste of corporate assets.' " *Integrated Resources*, 147 B.R. at 656 "Courts are loath to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence." *Integrated Resources*, 147 B.R. at 656.

14. Here, it is submitted that the Plan lacks specific information regarding the compensation packages proposed for Management of the Reorganized Debtor in contravention of

3

Section 1129(a)(5).

15.     Moreover, given the objections to compensation as contained in the pleadings previously filed by the United States Trustee, it is submitted that salaries should be carefully scrutinized. Manifestly, management, which naturally has a self-interest in receiving a more lucrative compensation package, cannot possibly be disinterested. In fact, the decision of Management to invoke the costly process of Chapter 11 rather than restructure outside of Chapter 11 strongly suggests that they chose a path designed to enhance their own personal financial interests rather than those of creditors and equity holders. The overly broad Exculpation provisions in the Plan also suggests that Management is placing their own interests above those of the Debtors and other interested parties.

16.     In sum, compensation should be fully disclosed in the Plan and independently evaluated in the totality of circumstances.

### The Exculpation Clause is Overly Broad

17.     Under the Plan, the term "Exculpated Party" means each of:

> (a) the Debtors, (b) the Reorganized Debtors, (c) the Consenting Term Loan Lenders, (d) the Consenting Equity holders, (e) the Credit Agreement Agent, (f) with respect to each of the foregoing Entities in clauses (a) through (e), the manager, management company, or investment advisor of any of the foregoing, and each of such Entities' respective current and former Affiliates, predecessors, successors, assigns, subsidiaries, managed accounts or funds, and (g) with respect to each of the foregoing Entities(a) through (f), such Entities' current and former officers, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, independent contractors, management companies, fund advisors, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

Plan, 13, ¶ 137.

18.     The Second Circuit in *Deutsche Bank AG v. Metromedia Fiber Network, Inc.* (*In re Metromedia Fiber Network, Inc.*), 416 F.3d 136, 141 (2d Cir. 2005) held that non-debtor third-party releases are proper only in "rare cases." Applying the Second Circuit's *Metromedia* decision, the Court in *In re DBSD North America, Inc.*, 419 B.R. 179, 217 (Bankr. S.D.N.Y. 2009), aff'd in

4

part and rev'd in part on other grounds, 634 F.3d 79, 93-100 (2d Cir 2011), stated that " 'exculpation provisions' (and their first cousins, so-called 'third-party releases') are permissible under some circumstances, but not as a routine matter."

19. In *Metromedia*, the Second Circuit described the limited situations when courts have approved non-debtor releases as:

> the estate received substantial consideration; the enjoined claims were 'channeled' to a settlement fund rather than extinguished; the enjoined claims would indirectly impact the debtor's reorganization 'by way of indemnity or contribution'; and the plan otherwise provided for the full payment of the enjoined claims. Non-debtor releases may also be tolerated if the affected creditors consent.

*Metromedia*, 416 F.3d supra at 142.

20. The Debtors have not demonstrated that the factors listed by the Second Circuit in *Metromedia* are met here. First, there has been no showing of the consideration that each of the Released Parties (particularly the former officers, directors and employees of the Debtors) are providing in exchange for the releases. Second, the Plan does not provide for the full payment of Claims. Third, WGH does not consent to the releases or broad injunction contained in the Plan.

21. The inclusion of the overly broad injunction under the Plan suggests improper motives by Management.

22. In sum, the Debtors have not satisfied their burden with respect to the Exculpation provisions of the Plan as set forth in *Metromedia*.

23. Moreover, in addition to approving them only in rare cases, courts have limited the applicability of exculpation clauses to estate fiduciaries, such as debtors-in-possession, creditors' committees (and their members) and estate professionals. See, e.g., *In re Tribune Co.*, 464 B.R. 126, 189 (Bankr. D. Del. 2011); *In re Washington Mutual, Inc.*, 442 B.R. 314, 350-51 (Bankr. D. Del. 2011).

24. Here the Exculpated Parties include, among others, the Debtors' current and

5

former officers, directors and employees, independent contractors, representatives, and certain creditors of the Debtors. It is submitted that the inclusion of non-fiduciaries as Exculpated Parties is not reasonable and beyond the scope contemplated by established case law.

25. Finally, it is submitted that exculpation for items that have not yet occurred (including Restructuring Transactions which are to take place after the Effective Date) is highly inappropriate.

### The Debtors Have Not Demonstrated Good Faith

26. The "good faith" requirement imposed by § 1123(a)(3) has not been established by the Debtors.

27. Pursuant to 11 U.S.C. § 1129(a)(3), the party seeking confirmation must show that "[t]he plan has been proposed in good faith and not by any means forbidden by law." "Good faith" is not defined in the Bankruptcy Code. *In re Madison Hotel Assocs.*, 749 F.2d 410 (7th Cir.1984).

28. Though the term "good faith," as used in section 1129(a)(3), is not defined in the Bankruptcy Code, the term is generally interpreted to mean that there exists "a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code." ... Thus, for purposes of determining good faith under section 1129(a)(3) ... the important point of inquiry is the plan itself and whether such plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code. Id. at 424-25 (citations omitted); accord *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 649 (2d Cir.1988) ("The good-faith test means that the plan was proposed with honesty and good intentions and with a basis for expecting that a reorganization can be effected.") (internal quotation marks and citations omitted); *In re Koelbl*, 751 F.2d 137, 139 (2d Cir.1984) ( "This court has defined the good faith standard in the bankruptcy context as requiring a showing that the plan was proposed with 'honesty and good intentions' and with 'a basis for expecting that a reorganization can be effected.)' " (quoting

6

*Manati Sugar Co. v. Mock,* 75 F.2d 284, 285 (2d Cir.1935)).

29.     Section 1129(a)(3) "speaks more to the process of plan development than to the content of the plan." *In re Bush Industries, Inc.*, 315 B.R. 292, 304 (Bankr.W.D.N.Y.2004). It must be viewed in light of the totality of the circumstances surrounding the establishment of a chapter 11 plan, *Madison Hotel Assocs.*, 749 F.2d at 425.

30.     Here, it is submitted that the reorganization scheme proposed under the Plan lacks good faith in that it was designed not to provide maximum relief for creditors and equity holders but to continue a compensation stream for management who, upon information and belief, would have received less lucrative payments in a restructuring which provided greater benefit to creditors and release them and others from liability.

31.     The Debtors have significant assets and revenue of approximately $1.141 billion, more than sufficient to satisfy ongoing obligations for the foreseeable future.  The expenses and delays associated with Chapter 11 has and will not inure to the benefit of creditors, equity holders and other interested parties.  In fact, it only benefits Management which controls the entities and who are to receive what is believed to be overly generous compensation packages

32.     In sum, it appears from the circumstances presented that the Debtors, led by Management with selfish interests, are acting in a manner designed to enhance themselves financially rather than an equitable restructuring plan.

## Reservation of Rights

32.     WGH reserves the right to make additional objections to confirmation of the Plan at any time prior to the hearing and/or join in the Objections of the Committee.

33.     WGH specifically reserves the rights to review the provisions in the Plan which deal with ownership restrictions by non US entities to ensure that the Debtors, as reorganized, strictly comply with regulations promulgated by the FCC relating to same.

7

**WHEREFORE**, WGH respectfully requests that the Court sustain this objection to confirmation of the Plan, and grant such other and further relief which to which it is entitled and is otherwise just and fair.

Dated: White Plains, New York
       March 29, 2018

                                              PENACHIO MALARA LLP

                                              /s/ Anne Penachio
                                              _____
                                              BY:  ANNE PENACHIO
                                              Counsel to WGH Communications, Inc.
                                              245 Main Street
                                              Suite 450
                                              White Plains, NY  10601
                                              (914) 946-2889