UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>    CM WIND DOWN TOPCO INC.,<br><br>                              Reorganized Debtor. | 17-13381-scc<br><br>Chapter 11 |

**PLAINTIFFS' OBJECTIONS TO THE MOTION OF THE REORGANIZED
DEBTOR TO (I) ENJOIN PLAINTIFFS FROM CONTINUING TO PROSECUTE
A COMPLAINT IN VIOLATION OF THE PLAN DISCHARGE INJUNCTION
AND (II) HOLD PLAINTIFFS IN CONTEMPT FOR VIOLATION
OF THE PLAN DISCHARGE INJUNCTION**

TODD C. BANK
 ATTORNEY AT LAW, P.C.
119-40 Union Turnpike
Fourth Floor
Kew Gardens, New York 11415
(718) 520-7125
By Todd C. Bank

*Counsel to Plaintiffs*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATUTES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

CASES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.        PLAINTIFFS' CLAIMS AROSE AFTER THE DISCHARGE DATE . . . . . . . . . . . . . . 1

II.       PLAINTIFFS' CLAIMS AROSE AFTER THE BAR DATE . . . . . . . . . . . . . . . . . . . . . 5

III.      REORGANIZED DEBTOR HAS ATTEMPTED TO SWAY THIS
           COURT BY INCLUDING IRRELEVANT MATTER IN THE MOTION . . . . . . . . . . 6

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

# TABLE OF AUTHORITIES

Page

**STATUTES**

11 U.S.C. § 1129(a)(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

11 U.S.C. § 1141 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

**CASES**

*Derbaremdiker v. Applebee's Int'l, Inc.*
   No. 12-cv-01058 KAM, 2012 WL 4482057
   (E.D.N.Y. Sept. 26, 2012), *aff'd*,
   519 F. App'x 77 (2d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Holly's Inc. v. City of Kentwood (In re Holly's, Inc)*,
   172 B.R. 545 (W.D. Mich. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*In re Ahern Enter., Inc.*,
   507 F.3d 817 (5th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4

*In re New Orleans Auction Galleries, Inc.*,
   No. 11-cv-11068, 2013 WL 153760
   (E.D. La. Jan. 15, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In re Shin*,
   306 B.R. 397 (D.D.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Worldcom, Inc.*,
   401 B.R. 637 (S.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-5

*United States v. White*,
   466 F.3d 1241 (11th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-4

*ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.)*,
   450 F.3d 996 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-2, 4

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| In re: | 17-13381-scc |
|---|---|
| CM WIND DOWN TOPCO INC., | Chapter 11 |
| Reorganized Debtor. | |

## INTRODUCTION

Plaintiffs, Robert Doyle and Kevin McCabe, submit, through the undersigned counsel, these objections to the motion of the Reorganized Debtor to (i) enjoin Plaintiffs from continuing to prosecute *Robert Doyle and Kevin McCabe, et al. v. Cumulus Media Inc., et al.*, Case No. 1:18-cv-04667-JBW-SMG (E.D.N.Y.) (the "Litigation"), and (ii) hold Plaintiffs in contempt for violation of the discharge injunction of the *First Amended Joint Plan of Reorganization of Cumulus Media Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (the "Plan") (Dkt. No. 446).

## ARGUMENT

### POINT I

### PLAINTIFFS' CLAIMS AROSE AFTER THE DISCHARGE DATE

The Plan's discharge occurred no later than the *Confirmation Date*. In *ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.)*, 450 F.3d 996 (9th Cir. 2006), the court expressed doubt that post-confirmation debts may be discharged:

> Both the reorganization plan and the bankruptcy court's confirmation order-in identical language-discharged [the debtor] "of all liability for payment of any Claims incurred before the *Effective Date*, to the *fullest extent provided by [11 U.S.C. § 1141]*." Section 1141 of the bankruptcy code provides that "*[e]xcept as otherwise provided* in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan ... discharges the debtor from *any debt that arose before the date of such confirmation*." 11 U.S.C. § 1141(d)(1)(A) (emphasis added).

1

> *We are uncertain whether post-confirmation debts can in fact be discharged in bankruptcy*. The "[e]xcept as otherwise provided" clause in section 1141 can be read in *either of two ways*. One way would be to read the clause as modifying the words "*any debt*." Under that reading, all pre-confirmation debts are dischargeable, except as limited by the plan or the code. *Alternatively*, one could read the "[e]xcept as otherwise provided" clause as modifying the phrase "*before the date of such confirmation*." Under that reading, even post-confirmation debts could be discharged if that were provided for in the reorganization plan.

*Id.* at 1001, n.5 (emphases added). Under the first of the two above-described readings, the "[e]xcept as otherwise provided" clause authorizes the exempting of a particular debt, or type of debt, from the discharge; the clause (again, under the first reading) does not provide that debts (either particular ones or types) may be discharged after the confirmation date. That is, the clause's exemption concerns *whether* a debt may be discharged, not *when* it may be discharged. The court proceeded to find as follows:

> We have not located a case addressing which reading is correct. Nor have we found an answer in the statute's legislative history. *See* H. Rept. No. 95-595 to accompany H.R. 8200, 95th Cong., 1st Sess. (1977), at 418. Although *we find the first alternative more plausible*, we need not decide the matter here. Under either reading, the bankruptcy court's confirmation order failed to provide for the presentation and adjudication of claims arising between April 30 and May 13. Because it would be manifestly unjust to discharge claims that could not have been filed as either pre-petition claims or administrative expenses, we hold that even if the bankruptcy court had the power to discharge post-confirmation claims, the court abused its discretion in discharging the women's discrimination claims here.

*Id.*(emphasis added). *See also id.* at 1001 (expressing agreement with creditors' counsel that "'[t]he problem with using the effective date is that the debtor is trying to vacate any right to payment for claims that it didn't even know existed at the time that one would vote on confirmation of the plan'").

*See also United States v. White*, 466 F.3d 1241 (11th Cir. 2006):

> The plan did not contain any provisions explicitly stating that the *discharge* would take place after confirmation, *but* the plan did say

2

> that it would *take effect* sixty days *after the Order of Confirmation could no longer be appealed* . . . . Thus, we must determine whether a discharge was granted upon *confirmation* of the plan *or* upon the plan's *effective date*. We conclude that *a plan's identification of a post-confirmation effective date is not sufficient to delay the grant of discharge*.
>
> . . . [T]he statutory language [of 11 U.S.C. § 1141(d)(1)] *does not explicitly refer to an effective date*. It does, however, allow that confirmation of a plan need not grant the debtor a discharge *if the plan provides otherwise*. Thus, [the debtor] can prevail *only if the plan's stipulation of a post-confirmation effective date satisfies the "otherwise provided" condition*. We hold that it does not.
>
> . . . [W]hile the Bankruptcy Code makes *numerous references to the effective date of the reorganization plan*, it does *not* in [*Section 1141(d)(1)*]. *If* the plan could delay the grant of discharge *merely by having a post-confirmation effective date*, then *Congress' statement* that "the confirmation of a plan ... discharges the debtor from *any debt* ..." would be in *error*. The reason is that, under this interpretation of § 1141(d)(1) [(that is, the interpretation to which the first clause of the preceding sentence refers)], confirmation of a plan would discharge debts *only when the plan takes effect upon confirmation*. That is to say, the triggering event for discharge would not actually be the plan's *confirmation* but the plan's *taking effect*. Because of the Bankruptcy Code's *numerous references to the reorganization plan's effective date elsewhere*, we should assume that *had Congress intended to condition discharges on a plan's taking effect*, it would have done so *explicitly*.

*Id.* at 1245 (emphases added; footnote omitted).

In *In re Ahern Enter., Inc.*, 507 F.3d 817 (5th Cir. 2007), the court agreed with the reasoning of *White*:

> Article 8.14 [of the plan] states, in relevant part: "The confirmation of the Plan (subject to the occurrence of the Consummation Date) shall discharge the Debtor from any debt that arose before the Consummation date ...."
>
> ***
>
> [R]egardless of how the term "*consummation*" is interpreted in article 8.14, [the lien holder]'s lien was voided upon *confirmation* of the plan.

The Eleventh Circuit reached a similar conclusion in

3

> considering the application of 11 U.S.C. § 1141(d) in *United States v. White*, 466 F.3d 1241 (11th Cir.2006). Section 1141(d) provides: "(1) Except as *otherwise provided* in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan (A) discharges the debtor from any debt that arose before the date of such *confirmation* ...." The court found in *White* that the debtor was granted a discharge upon confirmation, notwithstanding that the plan provided *a post-confirmation effective date*. Id. at 1246. The court noted that *a post-confirmation effective date does not satisfy the "otherwise provided" condition* of section 1141(d). *Id.* The court reasoned that a holding that discharge occurs on some *effective date* of a plan, instead of upon *confirmation* of the plan, would be *contrary to Congressional intent*: "If the plan could delay the grant of discharge merely by having a post-confirmation effective date, then Congress' statement that 'the confirmation of a plan ... discharges the debtor from any debt ...' would be in error .... [T]he triggering event for discharge would not actually be the plan's confirmation but the plan's taking effect .... [W]e should assume that had Congress intended to condition discharges on a plan's taking effect, it would have done so explicitly." *Id.*
>
> The language of *section 1141(c) similarly provides* that the property dealt with by the plan will is free and clear after *confirmation*. Even if [the lien holder]'s interpretation of the plan is *correct*, and the *plan did not take effect until the Consummation Date*, its lien was void after *confirmation* of the plan, by operation of § 1141(c), unless the plan specifically provides otherwise.

*Id.* at 824, 825 (emphases added; footnote omitted).

In *Holly's Inc. v. City of Kentwood (In re Holly's, Inc)*, 172 B.R. 545 (W.D. Mich. 1994), the court found that debts may not be discharged post-confirmation: "[the] Plan did not state that all debts incurred prior to the effective date were discharged. Moreover, the [] Plan *could not have done so*. Section *1141(d)(1)* allows the Plan to except certain pre[-]confirmation debts from discharge; it *does not empower the Debtor to rewrite the Code and discharge debts that arise post[-]confirmation*." *Id.* at 560-561 (emphases added; (footnote omitted).

In *In re Worldcom, Inc.*, 401 B.R. 637 (S.D.N.Y. 2009), in which the court did "not reach the issue as to whether claims that arise during the post-confirmation/pre-effective date period can be subject to discharge under § 1141 . . . [because the debtor] did not establish a bar date by which

4

administrative claims against the estate must be filed . . . [,][and that, therefore][,] . . . there [was] no concern that the [the Chapter 7 trustee]'s claims would be discharged without providing an opportunity to present his claims since his claims can still be filed," *id.* at 647, n.13, the court also quoted the following from *In re ZiLOG* 450 F.3d at 1001: "'[C]laims arising between the Plan's confirmation and Effective Dates [cannot be discharged] without first allowing for the presentation of such claims'" (brackets by *In re Worldcom*).

In *In re Shin*, 306 B.R. 397 (D.D.C. 2004), the court found that, "[i]t is *doubtful* that Congress intended . . . post[-]petition non-administrative claims (whose holders cannot vote on a plan), to be placed in a *class* (the predicate to [11 U.S.C.] § 1129(a)(7) being applicable) when the purpose of placing claims in a class is that the holders of the claims in that class are *generally permitted to vote on the plan*.")

Plaintiffs' claims were not discharged. Those claims arose *after* the Confirmation Date, *i.e.*, after May 10, 2018, *see* Litigation Complaint, ¶¶ 46-51 (a copy of which is annexed as Exhibit "E" to the instant motion); and, although Plaintiffs would have had the right to vote as members of Class 6, *see* Plan, Art. III(C)(6), Plaintiffs were, of course, not members of Class 6 and could not, and did not, vote on the Plan.

## POINT II

## PLAINTIFFS' CLAIMS AROSE AFTER THE BAR DATE

Reorganized Debtor notes that the *Order (I) Establishing Deadlines for (A) Submitting Proofs of Claim and (B) Requests for Payment under Bankruptcy Code Section 503(b)(9), (II) Approving the Form, Manner and Notice Thereof, and (III) Granting Related Relief* (the "Bar Date Order"; Dkt. No. 353) "set *March 7, 2018* at 5:00 p.m. (Prevailing Pacific Time) as the deadline by which non-governmental claimants were required to file a proof of claim," R.D. Mtn., ¶ 8 (emphasis added); that, "[c]onsistent with the Bar Date Order, the notice of the bar date was *published in the*

5

*national edition of The New York Times,*" ¶ 9" (emphasis added); and that "Plaintiffs *did not file a proof of claim* in the Chapter 11 Cases." *Id.*, ¶ 10 (emphasis added). However, Plaintiffs' claims arose *after the Bar Date* (and, therefore, *after* the date by which the arising of a claim gave rise to the obligation to file a proof of claim, *i.e.*, the Petition Date, which was *November 29, 2017*, *see* Bar Date Order*,* ¶ 4). Thus, Reorganized Debtor's contention that "The Plaintiffs Were Unknown Creditors Who Received Constitutionally Sufficient Notice of the Bar Date by Publication of the Bar Date Notice" (R.D. Mtn., heading, p.8) is irrelevant because, pursuant to the terms of the Bar Date Notice, Plaintiffs were not obligated to file a proof of claim; indeed, any such attempt would have been rejected as both untimely and outside the scope of the period during which a claim had to arise in order for such claim to be the subject of a proof of claim. *See In re New Orleans Auction Galleries, Inc.*, No. 11-cv-11068, 2013 WL 153760, *3 (E.D. La. Jan. 15, 2013) (the requirement to file proofs of claim is inapplicable to persons whose claims arose after the bar date).

## POINT III

### REORGANIZED DEBTOR HAS ATTEMPTED TO SWAY THIS COURT BY INCLUDING IRRELEVANT MATTER IN THE MOTION

Reorganized Debtor states, without explanation, that "Doyle and McCabe are professional plaintiffs." R.D. Mtn., ¶ 2. Although this description is presumably based upon the fact that Doyle and McCabe have been plaintiffs in other cases, Reorganized Debtor does not explain how that fact, or any other fact upon which Reorganized Debtor might have based the "professional plaintiffs" moniker, has any relevance to the considerations that this Court is to employ in resolving the instant motion. Instead, the transparent purpose of Reorganized Debtor's *ad hominem* attack is to prejudice this Court against Plaintiffs, but the effect of this tactic perhaps reflects at least some degree of doubt as to the merits of the instant motion.

Reorganized Debtor states: "Plaintiffs' counsel, Mr. Bank, brought nearly identical claims

6

against other corporate defendants, which claims were dismissed for failure to state a claim. *See, e.g., Derbaremdiker v. Applebee's Int'l, Inc.* No. 12-CV-01058 KAM, 2012 WL 4482057 (E.D.N.Y. Sept. 26, 2012), *aff'd*, 519 F. App'x 77 (2d Cir. 2013)." R.D. Mtn., ¶ 2, n.2. First, the claims in *Derbaremdiker* were similar, but, in relevant respects, dissimilar, to the claims at issue in the Litigation. *See* R.D. Mtn., Exhibit "G," p.2 (letter from Attorney Bank to Reorganized Debtor's Litigation counsel). Second, and more importantly, the merits of the Litigation, let alone the merits of *Derbaremdiker*, have nothing to do with the issues presented by the instant motion. Thus, again, Reorganized Debtor obviously seeks to prejudice this Court against Plaintiffs.

Reorganized Debtor states: "On August 1, 2018, [Reorganized Company's General Counsel] Richard Denning responded to the July 20 Letter and draft complaint, refuting Plaintiffs' allegations. Mr. Denning advised Mr. Bank to refrain from filing the draft complaint, as doing so would violate bankruptcy laws. A copy of Mr. Denning's August 1, 2018 letter is attached hereto as Exhibit D," R.D. Mtn., ¶ 12(b); *see also id.*, ¶ 24 ("on August 1, 2018, before the Complaint was filed, both the Plaintiffs and Mr. Bank were put on specific notice of the discharge injunction by the letter sent from Mr. Denning, the Reorganized Company's General Counsel. *See* August 1 Letter, 2 ('pursuing your proposed complaint will violate U.S. bankruptcy laws…'). Notwithstanding this knowledge, the Plaintiffs and Mr. Bank knowingly and willfully violated the discharge injunction by filing the Complaint. On August 27, 2018, counsel to the Reorganized Company sent another letter to the Plaintiffs and Mr. Bank reminding them again of the discharge injunction and asking that the Complaint be withdrawn or dismissed"). Inexplicably, Reorganized Debtor did not attach the undersigned's response of August 3, 2018, a copy of which, for the sake of completion, is therefore annexed as Exhibit "A" hereto. Of course, the merits of the Litigation are, again, irrelevant to the instant motion.

Reorganized Debtor states: "[o]n August 27, 2018, counsel for Cumulus sent a letter to Mr.

7

Bank . . . responding to the Complaint, detailing that the Complaint lacked any basis in fact or law, and that filing of the same constitutes a violation of the discharge injunction. Counsel advised Mr. Bank to withdraw or dismiss the Complaint." R.D. Mtn., ¶ 12(d). Again, the merits of the Litigation are irrelevant to the instant motion.

Insofar as the letters that the undersigned exchanged with Reorganized Debtor's counsel cursorily addressed the parties' positions concerning the effects of the bankruptcy matter, the letters speak for themselves.

## CONCLUSION

Based upon the foregoing, Plaintiff respectfully requests that this Court deny Reorganized Debtor's motion in its entirety and grant Plaintiffs any relief deemed just and proper.

Dated: November 27, 2018

        *s/ Todd C. Bank*
TODD C. BANK
 ATTORNEY AT LAW, P.C.
Todd C. Bank
119-40 Union Turnpike
Fourth Floor
Kew Gardens, New York 11415
(718) 520-7125
By Todd C. Bank

*Counsel to Plaintiffs*

# EXHIBIT "A"

TODD C. BANK, ATTORNEY-AT LAW, P.C.
119-40 Union Turnpike, Fourth Floor
Kew Gardens, New York  11415
Telephone: (718) 520-7125
Facsimile: (856) 997-9193

www.toddbanklaw.com                                          tbank@toddbanklaw.com

August 3, 2018

Cumulus Media Inc.
3280 Peachtree Road NW
Suite 2200
Atlanta, Georgia  30305
Attn.: Richard S. Denning

**Via Email**
**Richard.Denning@cumulus.com**

        Re:    Robert Doyle and Kevin McCabe, *et al.*
              v. Cumulus Media Inc., *et al.*

Dear Mr. Denning:

      In your letter of August 1, 2018, you make several statements that, below, I address on behalf of Robert Doyle and Kevin McCabe.

**Your Statement:**
[T]he contests' rules . . . were available for review by all listeners of the participating stations in portions of the stations' websites entitled "national contest rules archive" and/or "corporate contest rules archive," and their availability and location were announced on the participating stations several times each day.

**Our Response:**
My understanding is that such announcements began only several days before the current Sweepstakes Period, although we would welcome any evidence that shows otherwise. Moreover, as shown by the audio files that accompany your letter, such announcements, to the extent that they have been made, have been at times *other than when the Keyword Announcements were made*, *i.e.*, at times *other than when the Sweepstakes was actually conducted*, which is obviously, and necessarily, when such announcements *should* have been made. Therefore, a listener of a Keyword Announcement cannot be deemed, by entering into the corresponding Sweepstakes Segment, to have known of the existence of the Official Rules (the "Rules") nor, of course, their substance (the audio files were numbered "1," "3," and "4," suggesting that a file numbered "2" was perhaps inadvertently omitted).

**Your Statement:**
Exhibit B are examples of various announcements made by the station with regard to the contests, all of which make abundantly clear the broad scope of the contest.

Richard S. Denning  *Robert Doyle and Kevin McCabe,* et al. *v.*
August 3, 2018  *Cumulus Media Inc.,* et al.
–page 2–

**Our Response:**
The announcements merely refer to the existence and location of the Rules, but do not themselves indicate, much less "make abundantly clear[,] the broad scope of the contest."

**Your Statement:**
You need only look at the rules of the contests to see that it was made very clear to participants that each of the contests included many stations.

**Our Response:**
First, this statement does not apply to a listener who was not informed of the existence of the Rules. Second, "fine print," *i.e.*, the Rules, may *supplement,* but not *contradict,* the *reasonable understanding* of a person who did not read it; and, as the draft complaint alleges, that understanding was that the contest was on only the station to which a potential Sweepstakes entrant was listening. Thus, even an entrant who knew of the *existence* of the Rules but had not read them would not be bound by the Rules' statements regarding the participation of multiple stations.

**Your Statement:**
[E]ven on the launch page where participants entered the keywords, participants (including your clients) were informed that there were many stations participating in the contest. Indeed, they were expressly invited on that page to click through to the list of participating stations[.]

**Our Response:**
My understanding is that the participating stations never referred to any alternative method of entry (AMOE). Therefore, a person would not learn, merely by listening to such a station, that there was an AMOE; but listeners, of course, would not have been obligated in any event to use the AMOE nor access the AMOE launch page. Furthermore, the websites of participating stations state: "[i]f you *don't have* a text message plan, or you are having *technical difficulties* with texting, submit your keyword entry <u>HERE</u>" (italics added), thus, first, precluding the vast majority of potential Sweepstakes entrants, including Messrs. Doyle and McCabe, from choosing the AMOE, and, second, precluding them from having any reason to click the link and thereby access the launch page. In any event, neither Messrs. Doyle nor McCabe visited the launch webpage; therefore, they were not "informed that there were many stations participating in the contest" nor "expressly invited on that page to click through to the list of participating stations."

**Your Statement:**
[T]he "inferences" set forth in paragraph 6 of your letter are likewise incorrect. You can no longer make these inferences "upon information and belief" now that you are aware of the facts outlined above. The foregoing demonstrates clearly that: (i) Cumulus did not require stations to state the sweepstakes were "on" the station (that did not happen), (ii) Cumulus did not prohibit the station from informing listeners that the contest was conducted on multiple stations (in fact the station did provide this information), (ii) Cumulus did not prohibit stations from informing listeners that winners

Richard S. Denning  
August 3, 2018  
–page 3–

*Robert Doyle and Kevin McCabe,* et al. *v.*  
*Cumulus Media Inc.,* et al.

would be selected from persons who obtained the keyword from hundreds of participating stations (in fact it did provide this information), and (iv) Cumulus did not prohibit the station from informing listeners of the terms and conditions of the contest (in fact it did provide this information). All these allegations and inferences are debunked by the . . . rules.

**Our Response:**
First, the mere fact that the participating stations referred to the Rules (assuming, *arguendo*, that such references were, in fact, made) is not inconsistent with any of the inferences. Second, the Rules do not contain any directions, from Cumulus to the participating stations, that bear on any of the inferences. Third, even if the Rules *had* contained such directions, it would not automatically follow that such directions were actually followed by the stations, nor would the Rules' inclusion of such directions preclude the possibility that Cumulus separately issued the directions that the inferences describe.

**Your Statement:**
[B]y participating in the contest your clients waived any claims that they may have that arise from the contest, and specifically released Cumulus Media Inc., Cumulus Media New Holdings Inc. and Radio License Holdings LLC from the very claims you now seek to pursue. The release is specifically set forth in the rules.

**Our Response:**
First, Messrs. Doyle and McCabe did not hear any announcements regarding the existence, nor location, of the Rules, and, therefore, cannot be bound by them. Second, there is no other basis upon which they could be found to have agreed to the Rules; indeed, no such agreement was required as a condition to their entry into the Sweepstakes.

**Your Statement:**
I would recommend that you contact a bankruptcy attorney in that pursuing your proposed complaint will violate the U.S. bankruptcy laws and will result in sanctions against you and your client.

**Our Response:**
As you did not refute my statement regarding the bankruptcy issue, we would welcome any such refutation that you are able to provide.

If you wish to further discuss this matter, please contact me by August 10, 2018.

Sincerely,

s/ *Todd C. Bank*

Todd C. Bank

TCB/bd

## **CERTIFICATE OF SERVICE**

      I hereby certify that, on November 27, 2018, I electronically filed the foregoing with the Clerk of the Court for the United States Bankruptcy Court for the Southern District of New York by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: November 27, 2018

                                                              s/ *Todd C. Bank*
                                                               TODD C. BANK