PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Tel: 212-373-3000
Fax: 212-757-3990
Paul M. Basta
Lewis R. Clayton
Jacob A. Adlerstein
Claudia R. Tobler

*Counsel for the Reorganized Debtor and Defendants*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| **CM WIND DOWN TOPCO INC.** | : Case No. 17-13381 (SCC) |
| | : |
| **Reorganized Debtor.**[1] | : |

---------------------------------------------------------------x

**REORGANIZED DEBTOR'S AND DEFENDANTS' REPLY TO PLAINTIFFS'
OBJECTION TO THE MOTION OF THE REORGANIZED DEBTOR AND
DEFENDANTS TO (I) ENJOIN PLAINTIFFS AND THEIR COUNSEL FROM
CONTINUING TO PROSECUTE ACTIONS IN VIOLATION OF PLAN RELEASES,
EXCULPATION, AND INJUNCTION PROVISIONS, AND (II) HOLD
PLAINTIFFS AND THEIR COUNSEL IN CONTEMPT FOR VIOLATION
OF PLAN RELEASES, EXCULPATION, AND INJUNCTION PROVISIONS**

---

[1] The last four digits of the Reorganized Debtor's tax identification number are 9663. The location of the Reorganized Debtor's service address is: 3280 Peachtree Road, N.W., Suite 2200, Atlanta, Georgia 30305.

# TABLE OF CONTENTS

**Page**

Table of Authorities ............................................................................................................... ii

Preliminary Statement........................................................................................................... 1

Reply ..................................................................................................................................... 4

I.    The Confirmation Order Precludes the Actions................................................... 4

II.   Plaintiffs' Claims Are Released, Exculpated and Enjoined............................... 13

III.  The Court Should Hold Plaintiffs in Contempt and Award the Reorganized
Debtor's and Defendants' Reasonable Attorneys' Fees and Expenses ........... 14

Conclusion ......................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re 680 Fifth Ave. Assoc.*,
    209 B.R. 314, 322–23 (Bankr. S.D.N.Y. 1997) ..................................................................11

*In re Arcapita Bank B.S.C.(c)*,
    520 B.R. 15 (Bankr. S.D.N.Y. 2014) ....................................................................................4

*Boguslavsky* v. *Kaplan*,
    159 F.3d 715 (2d Cir. 1998) .................................................................................................4

*Cirillo Family Tr.* v. *Moezinia*,
    No. CV 10116-CB, 2018 WL 3388398 (Del. Ch. July 11, 2018) .........................................7

*In re Delta Air Lines, Inc.*,
    386 B.R. 518 (Bankr. S.D.N.Y. 2008) ................................................................................11

*Hokanson* v. *Petty*,
    No. CIV.A. 3438-VCS, 2008 WL 5169633 (Del. Ch. Dec. 10, 2008) ..................................7

*John Hancock Capital Growth Mgmt.* v. *Aris Corp.*,
    1990 WL 126656 (Del. Ch. Aug. 24, 1990) .........................................................................7

*In re Layo*,
    460 F.3d 289 (2d Cir. 2006) .................................................................................................4

*Magnotta* v. *Berry*,
    No. 91 CIV. 0531(DNE), 1996 WL 11238 (S.D.N.Y. Jan. 5, 1996) ...................................15

*In re Quigley Co., Inc.*,
    437 B.R. 102 (Bankr. S.D.N.Y. 2010) ................................................................................10

*In re Relativity Fashion, LLC*,
    No. 15-11989 (MEW), 2016 WL 3212493 (Bankr. S.D.N.Y. June 1, 2016),
    *aff'd*, 696 F. App'x 26 (2d Cir. 2017) ............................................................................4, 11

*Sure-Snap Corp.* v. *State St. Bank & Tr. Co.*,
    948 F.2d 869 (2d Cir. 1991) ...........................................................................................4, 12

*Tenn-Fla Partners* v. *First Union Nat. Bank of Fla.*,
    229 B.R. 720 (W.D. Tenn. 1999), *aff'd* 226 F.3d 746 (6th Cir. 2000) ................................10

*In re U.S.H. Corp. of New York*,
    280 B.R. 330 (Bankr. S.D.N.Y. 2002) ................................................................................15

*In re Vencor, Inc.*,
 284 B.R. 79, 83 (Bankr. D. Del. 2002) ...................................................................................11

*In re Worldcom, Inc.*,
 401 B.R. 637 (Bankr. S.D.N.Y. 2009) ...................................................................................11

**STATUTES**

11 U.S.C. § 1129(a)(3) ....................................................................................................................4

11 U.S.C. § 1144 ..........................................................................................................................11

The Reorganized Debtor and Defendants, by and through their undersigned counsel, hereby submit this reply (the "Reply") in response to Plaintiffs' objection [ECF No. 1095] (the "Objection") and in further support of the Motion [ECF 1084].[2]

**Preliminary Statement**

1. Plaintiffs' Objection makes even more clear that they are mounting an improper collateral attack on this Court's Confirmation Order, that the Actions should be enjoined and dismissed with prejudice, and that sanctions are warranted.

2. *First*, there is no legitimate challenge to this Court's findings in the Confirmation Order, which followed an extensive hearing involving dozens of exhibits and five days of testimony. Plaintiffs concede—as they must—that the Confirmation Order expressly found that the Plan "was proposed in good faith." (Obj. ¶ 18.) The Actions are an improper collateral attack on this Court's express finding. On the basis of no evidence, Plaintiffs have accused Crestview and Mary Berner of conspiring with a creditor, Voya—which held just *2.8%* of the Debtors' term loan—in a secret "side deal" to support the Debtors' RSA and Plan (where the Debtors' prepetition equity, including Crestview's holdings, was cancelled without any distribution). Plaintiffs claim that in return, Crestview was allowed to purchase a portion of Voya's annuity business and conduct a "profitable initial public offering." (Obj. ¶ 13.) Plaintiffs' theory—by their own admission—is that the alleged "side deal" purportedly "would have raised credibility questions that could have undermined the good faith determination and the finding that the Plan was in the best interests of creditors and the estate." (*Id.* ¶ 21.) Collateral estoppel and res judicata plainly bar this collateral attack. Indeed, Plaintiff WGH objected to confirmation of the Plan—and expressly challenged good faith—yet ***never raised*** the alleged "side deal" with

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

Voya. And while Plaintiffs claim they could not have raised these issues earlier, they were in fact publicly disclosed well before confirmation, as explained below. Plaintiffs are barred from raising them now.

3. Moreover, the Actions are also barred because section 1144 of the Bankruptcy Code—the exclusive avenue for revoking a confirmation order—requires a showing of actual fraud and bars challenges after 180 days. Plaintiffs have failed to meet these standards.

4. *Second*, Plaintiffs' allegations of a conflict of interest are completely fabricated. As to the Debtors' RSA and chapter 11 filings, Plaintiffs fail to mention that these steps were unanimously approved by the Debtors' Restructuring Committee, the majority of which was unaffiliated with Crestview. The RSA and Plan were also heavily negotiated with the assistance of professional advisors who were deposed, some of whom testified at the five-day confirmation hearing. As Steven Zelin testified, PJT Partners recommended to the Restructuring Committee that the Debtors execute the RSA because it offered a "comprehensive deleveraging transaction" that "gave the company financial flexibility and the opportunity to grow the business . . . in the face of what were continuing risks in the industry." (April 16, 2018 Tr. at 62:19-25.) The Court properly determined based on the substantial record, including testimony from Mr. Zelin and others, that the Plan was proposed in good faith. Meanwhile, Plaintiffs made no effort to pursue discovery, and did not even appear at the confirmation hearing to argue WGH's frivolous objection.

5. As to the Voya annuity transaction, Plaintiffs offer no facts suggesting that it was anything other than arm's length. And while Plaintiffs claim that "Voya sold much of the [acquired] business to Crestview, enabling Crestview to share in the IPO profits" (Obj. ¶ 13), Plaintiffs fail to disclose that (a) Crestview was part of a consortium of investors, including Apollo

and others, and (b) there has been no IPO of the acquired business. The accompanying declarations of Daniel G. Kilpatrick, Jeffrey Marcus, and Ross Oliver confirm that the Voya annuity transaction was extensively negotiated at arm's length, that it had absolutely no relationship to Cumulus, the term loan, the RSA, or the Plan, and that Messrs. Marcus and Oliver's approval of the RSA and chapter 11 filings was a good faith decision based on the best interest of the Debtors and their creditors. Plaintiffs' allegations of a conflict are utterly false and sanctionable.

6. We note that on January 14, 2019, Plaintiffs purported to amend their complaints and seek remand to Georgia Superior Court. While these acts further violate the Plan and Confirmation Order, Plaintiffs' purported amended complaints (attached as <u>Exhibits A and B</u> hereto) are barred and subject to dismissal to the same extent as the original complaints. They continue to expressly attack this Court's finding of good faith, asserting that Defendants breached fiduciary duties and acted with gross negligence, and (like Plaintiffs' original pleadings) contain numerous misrepresentations of fact.

7. *Third*, Plaintiffs' claims are also barred by the release, exculpation, and/or injunction provisions of the Plan, as previously explained, and Plaintiffs are precluded from showing the willful misconduct or gross negligence necessary to overcome these provisions.

8. *Fourth*, the blatant falsehoods in Plaintiffs' filings, and their pattern of bad faith conduct, confirm that the Actions should be enjoined and defendants awarded their fees. As the Court will recall, Plaintiff WGH filed an untimely objection to confirmation, which was overruled when no one argued on WGH's behalf at the hearing. WGH next filed an untimely and frivolous appeal of the Confirmation Order (later withdrawn), and a frivolous objection (also rejected) in the Debtors' FCC proceedings. Months later, Plaintiffs filed the meritless Actions. Plaintiffs then filed the frivolous Objection, signed by yet another attorney—their fifth—in

Plaintiffs' revolving cast of counsel. Most recently, Plaintiffs have purported to amend their complaints and seek remand, further violating the Confirmation Order and Plan injunction.

9. Plaintiffs' bad faith conduct continues to impose significant attorneys' fees and costs, which exceed $125,000 to date, on the Reorganized Debtor and Defendants. The Court should sanction Plaintiffs and order them to pay all fees and costs incurred in connection with the Actions and this Motion.

## Reply

### I. The Confirmation Order Precludes the Actions

10. Plaintiffs' frivolous Objection cannot evade the preclusive effect of the Confirmation Order, in which this Court expressly overruled the objections Plaintiff WGH asserted on March 29, 2018—including as to good faith—and found (among other things) the Plan was proposed "in good faith" and "negotiated in good faith and at arm's length." (Confirmation Order ¶¶ 5, 15.) These issues were determined on the merits based on a robust evidentiary record, including dozens of exhibits and five days of hearing testimony (*see* Confirmation Order at 3–5), and the Court's finding of good faith was necessary to confirm the Plan pursuant to 11 U.S.C. § 1129(a)(3). (Confirmation Order ¶ 15.)

11. A "confirmation order rejecting objections and finding that the plan satisfies [applicable requirements] is a final adjudication of the issues necessary to reach that conclusion" and "preclude[s] inconsistent claims at a later time." *In re Relativity Fashion, LLC*, No. 15-11989 (MEW), 2016 WL 3212493, at *9 (Bankr. S.D.N.Y. June 1, 2016), *aff'd*, 696 F. App'x 26 (2d Cir. 2017). Thus, the Confirmation Order is a final judgment on the merits with both collateral estoppel and res judicata effect.[3] Plaintiffs' breach of fiduciary duty and other claims, which assert that

---

[3] *Boguslavsky* v. *Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998) (elements of collateral estoppel); *In re Layo*, 460 F.3d 289, 294 (2d Cir. 2006) (confirmation order "constitute[s] a final judgment on the merits"); *Sure-Snap Corp.* v. *State St.*

4

Defendants did not act in good faith—and more broadly challenge confirmation of the Plan—are barred.

12. In support of their argument that preclusion should not apply, Plaintiffs present a fabricated and false claim that Defendant Crestview entered into a purported "side deal" with Voya, a creditor that held just 2.8% of the Debtors' prepetition term loan. Specifically, Plaintiffs assert that (a) "a Crestview subsidiary would purchase a large portion of Voya's [annuity] business and take it public, thus benefiting Crestview," (b) in return, Crestview would promote the Plan to "enrich" Voya, and (c) Crestview later "made easy and fast money from taking [the acquired business] public" in an IPO. (Mot. Ex. D ¶¶ 29, 35-36, 45, 49.) Plaintiffs speculate that "[h]ad the Voya-Crestview deal been disclosed, the result [confirming the Plan] may have been different." (Obj. ¶ 21.)

13. As explained below and in the Declaration of Daniel G. Kilpatrick, a Crestview partner who worked extensively on the Voya annuity transaction, Plaintiffs' allegation of a "side deal" is frivolous and has no basis in reality. The relevant facts are as follows:

- Voya's $49 million term loan holdings (2.8% of the $1.73 billion total principal amount outstanding) were disclosed in a Rule 2019 statement filed on December 20, 2017. [ECF No. 142; *see also* ECF 639.]

- As Plaintiffs concede (Mot. Ex. D ¶ 35; Mot. Ex. E ¶ 31), in an 8-K filed on December 21, 2017, Voya announced that a portion of its annuity business was being sold to a group of investors, including Apollo, Athene, Crestview and Reverence Capital Partners; the Crestview affiliate had a 23% equity interest in the transaction. (Kilpatrick Decl. ¶ 6.)

- Plaintiffs' assertion that there has been an "IPO" of the acquired Voya business handled by J.P. Morgan (Obj. ¶ 13) is false. That business (now called Venerable Holdings) remains a private company, and the "IPO" Plaintiffs cite (Mot. Ex. D ¶ 42) involved Victory

---

*Bank & Tr. Co.*, 948 F.2d 869, 877 (2d Cir. 1991) (bankruptcy court order "was res judicata to the later action"); *In re Arcapita Bank B.S.C.(c)*, 520 B.R. 15, 28 (Bankr. S.D.N.Y. 2014) (res judicata applies where "independent judgment in a separate proceeding would impair, destroy, challenge, or invalidate the enforceability or effectiveness of the reorganization plan") (citation and internal quotation marks omitted).

5

Capital, an asset management firm *wholly unrelated* to Voya.

- The Victory Capital IPO was also publicly disclosed before confirmation, including in a January 11, 2018 S-1 that specifically identified Crestview's ownership. Plaintiffs knew of the Victory Capital IPO by February 7, 2018. (*See* Mot. Ex. D at Ex. F.)

14. Despite these extensive public disclosures, Plaintiffs never raised any of these matters prior to confirmation, including in WGH's March 29, 2018 objection challenging good faith, which made *no reference* to the Voya annuity transaction or Victory Capital IPO.

15. Indeed, Plaintiffs have simply fabricated their theory of a "side deal," and no evidence supports their false claim that the Voya annuity transaction was a *quid pro quo* for Crestview's support of the Plan. In reality, the Voya transaction had nothing to do with the Debtors or the Plan, and in no way shows that Crestview had a conflict or acted in bad faith.

16. To begin with, Plaintiffs' "conflict" theory fails because the Debtors' RSA and bankruptcy filing were unanimously approved by the Debtors' Restructuring Committee with six members (Mary Berner and five independent directors), the majority of whom had no connection to Crestview. (*See* Mot. Ex. D at Ex. A (Committee resolution).) Thus, even excluding the votes of the two members affiliated with Crestview (Marcus and Oliver) would not have affected the Restructuring Committee's approval of the actions Plaintiffs challenge.

17. Plaintiffs' outlandish suggestion that Defendant Berner somehow participated in the "side deal," or at minimum had a conflict in supporting the Plan because she stood to receive a compensation package in a restructuring, and that other (unnamed) Board members received "extraordinary compensation" for "cooperating" (Obj. ¶¶ 6, 23, 27), also can be rejected at the outset, given the Court's express approval of the Management Incentive Plan and findings that insider compensation had been fully disclosed and was the subject of "significant briefing." (Confirmation Order ¶¶ 18, 41, 92.)

18. Moreover, Crestview's involvement in the purchase of Voya's annuity

6

business was not a conflict of interest for Messrs. Marcus or Oliver because it had nothing to do with Crestview's support of the Plan. Disabling conflicts may arise where (1) directors "appear on both sides of a transaction," or (2) "expect to derive a financial benefit from it which does not devolve upon the corporation or all stockholders generally." *Hokanson* v. *Petty*, No. CIV.A. 3438-VCS, 2008 WL 5169633, at *7 (Del. Ch. Dec. 10, 2008) (citation omitted).

19. Plaintiffs do not contend that Crestview appeared on "both sides" of the Debtors' Plan, and in fact concede that Crestview lost its entire equity investment in Cumulus as a result of the Plan. (Obj. ¶ 10; Mot. Ex. D ¶ 37.) Instead, Plaintiffs allege that Crestview supported the Plan to obtain a potential financial benefit from the unrelated Voya transaction. However, courts have regularly rejected similarly far-fetched allegations based on unrelated transactions.

20. For example, in *Cirillo Family Tr.* v. *Moezinia*, No. CV 10116-CB, 2018 WL 3388398, at *10 (Del. Ch. July 11, 2018), the plaintiff argued that directors breached their duties by failing to disclose in a notice of appraisal rights sent to stockholders in connection with a merger that they were conflicted because, years prior, they had received warrants from the corporation as part of a debt purchase. The court rejected the plaintiffs' argument that the warrants presented a conflict because it "focuse[d] on a transaction unrelated to the Merger." *Id.* at *10. The court further explained that the merger itself was "not a self-interested transaction implicating the duty of loyalty," and instead "was an arm's-length transaction between unaffiliated parties," and that the fact directors had received warrants was unrelated to the merger and thus "logically would have no impact on a stockholder's decision . . . to accept the Merger consideration or seek appraisal." *Id.* at *11, *17.[4]

---

[4] *See also John Hancock Capital Growth Mgmt.* v. *Aris Corp.*, 1990 WL 126656, at *3 (Del. Ch. Aug. 24, 1990)

7

21. Here, there is no evidence that Crestview, Mr. Marcus or Mr. Oliver supported the Debtors' Plan in order to receive benefits from the unrelated Voya annuity transaction. Plaintiffs allege no specific statements regarding the purported "side deal," never explain how Crestview's involvement in the Voya transaction was purportedly contingent on Crestview supporting the Plan, and identify no facts suggesting the Voya transaction was anything other than arm's length. Nor do Plaintiffs allege that the transaction was conducted at a below-market price. In reality, as Mr. Kilpatrick explains, the price and other terms of the Voya transaction were heavily negotiated at arm's length between Voya, Crestview, and several other investors, and Cumulus and the term loan were never discussed. (Kilpatrick Decl. ¶¶ 7–11.) Further, Messrs. Marcus and Oliver explain that they had no involvement in the negotiation of the Voya transaction, and that the Voya transaction also had nothing to do with their good faith decision to approve the Debtors' entry into the RSA and chapter 11 filing. (Marcus Decl. ¶ 6; Oliver Decl. ¶ 11.) There is simply no evidence for Plaintiffs' theory.

22. The involvement of numerous third parties in negotiating, documenting and implementing the Plan further refutes Plaintiffs' allegation of a "side deal." Plaintiffs do not (and could not credibly) claim that Voya somehow dictated any aspect of the Debtors' Plan, which was negotiated with a large number of creditors, including the other members of the ad hoc group of term loan holders (whose $870 million holdings far outweighed Voya's $49 million). More importantly, the terms of the Plan were subject to significant scrutiny and strenuous objection by the official committee of unsecured creditors, who specifically argued that the Plan undervalued

---

(rejecting claim that directors had breached duty of loyalty by rejecting bond repurchase transaction to "protect their . . . ongoing personal deals" involving unrelated entities; despite allegation that investment banker for directors' personal transactions opposed repurchase, there was "no evidence" that banker "might treat [the directors] unfavorably" if they supported it).

8

the Debtors and overcompensated the term loan holders. That issue was the core subject of the five-day confirmation hearing, after which the court overruled the objection and found the Plan satisfied the standards for confirmation and did not over-compensate the term loan lenders on account of their claims.

23. Nor do Plaintiffs explain—or even acknowledge—the presence of multiple third party investors (Apollo, Athene, and Reverence) in the transaction with Voya. The economics of the alleged "side deal" make no sense: because Voya held just 2.8% of the term loan, and the Debtors' Plan provided equal and ratable treatment of the other 97.2% of term loan holders, Plaintiffs' theory implies that Voya was willing to sell a substantial portion of its business to receive just 2.8 cents of each dollar in additional recovery on its term loan. Meanwhile, Crestview only had a 23% equity interest in the Voya annuity transaction, and under Plaintiffs' theory, for every dollar Voya allegedly wished to confer on Crestview, Voya had to give over $3 to the other investors. And, of course, Crestview lost the entirety of its equity investment in Cumulus under the Plan.

24. In addition, Plaintiffs' claim that Crestview wished to acquire the Voya annuity business because it was "poised for a profitable initial public offering" in early 2018 (Obj. ¶ 13) is false, since the acquired business remains private. Nor does the mere happenstance that J.P. Morgan was one of three joint book-running managers for the unrelated IPO of Victory Capital (which Crestview had acquired in 2013) suggest any "side deal" as to the Debtors' Plan.

25. Indeed, while Plaintiffs' purported amended complaints further violate the Confirmation Order and Plan and should not be considered, the amended pleadings double down on the false allegations regarding an IPO of the acquired Voya business. They continue to allege that in the purported "side deal," a "Crestview subsidiary would purchase a large portion of Voya's

9

business and take it public" (Reply Ex. A ¶ 30), and that the "Crestview subsidiary that bought the [Voya] assets" conducted an "IPO" (*id.* ¶ 59, *id.* Ex. B ¶ 62). Plaintiffs also allege, with no explanation or factual support, that Crestview has obtained "fees earned from the management of funds holding Cumulus secured debt," and that there have been "***two*** public offerings of stock of Crestview subsidiaries benefitting from a bankruptcy of Cumulus" (*id.* Ex. A ¶ 57, *id.* Ex. B ¶ 60 (emphasis added)).

26. In yet another meritless attempt to manufacture a connection between Voya and Victory Capital, Plaintiffs' amended pleadings allege that "[m]any funds at Voya were managed by Victory" (Reply Ex. A ¶ 31), and Plaintiff Steinmann attaches a Morningstar profile of the Victory Integrity Small-Cap Value Fund with the Voya logo (*id.* Ex. B at Ex. C). Crucially, however, Plaintiffs fail to mention that this is ***not a Voya fund***. Instead, as Mr. Oliver explains, Voya's website confirms that it merely promotes investments in funds by more than 30 managers, including Alliance Bernstein, BlackRock, Oppenheimer, PIMCO, and T. Rowe Price, as well as Victory. (Oliver Decl. ¶ 10.) Voya's marketing arrangement with Victory has been in place since at least 2014 (*id.*), and Victory-managed funds are similarly promoted by other firms, such as Vanguard (*id.*). This standard marketing arrangement in no way suggests any relationship between Voya's 2.8% term loan holding and Crestview's support of the Plan.

27. Plaintiffs' assertion that the Voya transaction was "concealed" in this bankruptcy, such that Plaintiffs supposedly lacked a "full and fair opportunity to litigate," also fails. While Plaintiffs assert that a "good faith finding requires an examination of related party transactions" (Obj. ¶ 20), their cited cases involved misconduct by the debtor and therefore are inapposite.[5] Plaintiffs cite no authority holding that the bankruptcy court must examine irrelevant

---

[5] In *Tenn-Fla Partners* v. *First Union Nat. Bank of Fla.*, 229 B.R. 720, 734-35 (W.D. Tenn. 1999), *aff'd* 226 F.3d 746

10

transactions between non-debtors to find good faith, and the Delaware authorities rejecting alleged conflicts based on unrelated transactions further undermine Plaintiffs' position.[6]

28. Plaintiffs' "concealment" argument also fails because Plaintiffs have not met the standards for revoking confirmation under section 1144 of the Code. *See In re Delta Air Lines, Inc.*, 386 B.R. 518, 532 (Bankr. S.D.N.Y. 2008) ("[S]ection 1144 is the only avenue for revoking confirmation of a plan of reorganization.") (citation omitted). Such extraordinary relief requires an adversary proceeding to be filed within 180 days after confirmation, while Plaintiffs did not timely file any pleading in this Court,[7] as well as a showing of actual fraud on the Court, which Plaintiffs have not shown (and cannot show) with the particularity required under Federal Rule of Civil Procedure 9(b). Plaintiffs cannot overturn this Court's findings.

29. Further, confirmation orders have preclusive effect "not only as to issues actually raised and actually addressed, but as to issues that ***could have been raised but were not.***" *In re Relativity Fashion, LLC*, 2016 WL 3212493 at *9; *see also In re Worldcom, Inc.*, 401 B.R. 637, 648 (Bankr. S.D.N.Y. 2009) ("As a binding final order, a confirmation order prohibits those parties bound under § 1141(a) or their privies from relitigating any matter that was or could have been raised at confirmation."). Nor can parties "avoid the preclusive [e]ffect of res judicata by

---

(6th Cir. 2000), revoked confirmation where the debtor had intentionally failed to disclose third parties' offers to purchase its primary asset to ensure that bondholders received only a 75% recovery, and, shortly after confirmation, sold the asset for a price that would have yielded a full recovery. *Id.* at 725. In *In re Quigley Co., Inc.*, 437 B.R. 102, 125–29 (Bankr. S.D.N.Y. 2010), confirmation was denied where the debtor's sole shareholder conditioned settlement payments to asbestos claimants on their vote in favor of a plan, resulting in a "tainted vote."

[6] For the same reason, Plaintiffs' allegation that the Voya transaction was not reviewed by the independent Review Committee is beside the point.

[7] *See* 11 U.S.C. § 1144; *In re Vencor, Inc.*, 284 B.R. 79, 83 (Bankr. D. Del. 2002) (refusing to consider relief under section 1144 where complaint was not filed in bankruptcy court and did not seek relief pursuant to section 1144); *see also In re 680 Fifth Ave. Assoc.*, 209 B.R. 314, 322–23 (Bankr. S.D.N.Y. 1997) (noting that "[c]ourts strictly construe this 180 day time limitation, applying it even if a fraud is discovered beyond that deadline").

asserting a new theory or a different remedy." *Sure-Snap Corp.* v. *State St. Bank & Tr. Co.*, 948 F.2d at 875 (citation omitted).

30.   Under this standard, Plaintiffs' claims are clearly barred. As explained above, all the information Plaintiffs now invoke was publicly available before confirmation, yet Plaintiff WGH's March 2018 objection made no reference to these matters. Plaintiffs cannot evade the Court's express findings by making stale (and fabricated) allegations based on public information and seeking to re-litigate matters that they could have raised prior to confirmation, but did not. While Plaintiffs' purported amended complaints attempt to plead around this reality, alleging that Crestview's claimed conflict was "not knowable until the disclosure of conflicting business relations after the Cumulus bankruptcy" (Reply Ex. A ¶ 34 & Ex. B ¶ 33), the facts are to the contrary, as set forth above. Again, it is undisputed that Voya's 2.8% term loan holdings, Voya's unrelated sale of its annuity business to Venerable, Crestview's interest in Venerable, and the unrelated Victory Capital IPO all were publicly disclosed months before confirmation.

31.   Finally, Plaintiffs' conclusory assertion—apparently driven by former Cumulus director John Dickey—that "certain board members" were excluded from meetings related to the restructuring (Obj. ¶ 23), also cannot avoid preclusion, since (among other reasons) Mr. Dickey was not on the Restructuring Committee; Plaintiffs also could have raised such purported issues prior to confirmation; and in any event, such allegations do not show bad faith. As Mr. Marcus explains, the reason Mr. Dickey was not appointed to the Restructuring Committee was because the Board understood that his brother Lew Dickey (the former CEO of Cumulus who had resigned from the Board and designated John Dickey as his replacement on the Board) had formed a special purpose acquisition vehicle and was trying to pursue an alternative deal with debtholders, even as the Board was considering restructuring options, and that John Dickey was

12

potentially working with or otherwise supporting Lew Dickey's efforts. (Marcus Decl. ¶ 8.)

32. In sum, Plaintiffs' claims in the Actions are barred, and to protect the integrity of the chapter 11 process, this Court should enforce the Confirmation Order to enjoin any further prosecution of the Actions and compel their dismissal with prejudice.

## II. Plaintiffs' Claims Are Released, Exculpated and Enjoined

33. As the Motion explained in detail, all of Plaintiffs' claims are also barred by the release, exculpation, and/or injunction provisions of the Plan and Confirmation Order.

34. *First*, Plaintiffs do not seriously dispute that their purported claims are in reality derivative claims held by the Debtor, which were expressly released in the Debtor release. Nor do Plaintiffs successfully invoke that release's narrow exception for claims based on actions "determined by a final Order to have constituted . . . gross negligence or willful misconduct," since (a) Plaintiffs are precluded from contesting good faith, as explained above, and (b) in any event, Plaintiffs do not sufficiently plead gross negligence or willful misconduct. The Debtor release requires the dismissal of the Actions. (Mot. at 12–16.)

35. *Second*, to the extent any of Plaintiffs' claims are considered direct, such claims are also barred by the Plan's third-party release, and Plaintiffs are barred from asserting the willful misconduct and gross negligence exception to that release. While the Objection asserts that Plaintiff EJS opted out of the third-party release, all Plaintiffs' claims are nonetheless barred under (a) res judicata and collateral estoppel, and (b) the Plan's Debtor release and exculpation provisions (which are not subject to any opt-outs). Further, the Objection tacitly concedes that Plaintiffs WGH and Steinmann did not opt out of the third-party release.[8]

---

[8] The bare contention by WGH's purported CFO that she made a "simple mistake" in failing to opt out of the third-party release (Obj. Ex. D ¶ 3) should be rejected. The Class 5 ballot contained a separate box of text clearly identifying the choice to opt out of the third-party release (Obj. Ex. C at 3).

13

36. *Third*, the Plan's exculpation provision also applies. Again, Plaintiffs do not dispute that their claims are within the scope of the provision, and merely assert the exception for willful misconduct and gross negligence, which does not apply for the reasons above and below.

37. *Fourth*, Plaintiffs have already been expressly enjoined from commencing or pursuing any released or exculpated claims, including those asserted in the Actions.

### III. The Court Should Hold Plaintiffs in Contempt and Award the Reorganized Debtor's and Defendants' Reasonable Attorneys' Fees and Expenses

38. *Finally*, a contempt finding and sanctions are warranted because Plaintiffs willfully violated the Plan and Confirmation Order. It is inequitable, and inconsistent with the fresh start that confirmation of a chapter 11 plan is intended to provide, that Plaintiffs' bad faith conduct continues to impose significant attorneys' fees on Reorganized Debtor and Defendants over eight months after confirmation.

39. Plaintiffs have long known that their claims are barred, as explained in the Motion and above. In addition, Plaintiffs concede that they were asked to withdraw the Actions over a month ago, but they still have not done so. Plaintiffs' Objection and the declaration of Geoffrey Chambers confirm that (a) on December 17, 2018, Defendants' counsel called Plaintiffs' counsel to explain that the Actions "violated this Court's Confirmation Order" and request that Plaintiffs promptly withdraw the Actions with prejudice; (b) Plaintiffs did not do so; and (c) only on December 21 did Plaintiffs bother to hire "counsel with bankruptcy expertise." (ECF No. 1096 ¶¶ 10-11; Objection ¶ 16.)

40. These admissions—and the fact that Plaintiffs still have not withdrawn the Actions and oppose this Motion—confirm that Plaintiffs are acting in bad faith. It is telling that Plaintiffs only retained "counsel with bankruptcy expertise" on December 21, weeks after they

14

filed the Actions challenging a confirmed bankruptcy Plan. Further, it appears that the bankruptcy counsel (at Seward & Kissel LLP) is no longer involved, since the Objection was filed by yet another firm—Plaintiffs' *fifth* counsel in their frivolous campaign.

41. Plaintiffs' gross misrepresentations also confirm sanctions are warranted. As explained above, Plaintiffs have simply fabricated a conflict of interest, and blatantly misstate facts apparent from a simple internet search. *Cf. Magnotta* v. *Berry*, No. 91 CIV. 0531(DNE), 1996 WL 11238, at *4 (S.D.N.Y. Jan. 5, 1996) (Rule 11 sanctions for failure to perform "reasonable inquiry" where "factual inaccuracies" were clear from papers submitted with filing).

42. Finally, Plaintiffs' belated attempt to amend their complaints and seek remand underscores their utter disregard for this Court's Confirmation Order and the Plan. Further, while Plaintiffs' remand motions will not be heard until February 25 at the earliest, any remand would not affect this Court's authority to enjoin the Actions and order dismissal with prejudice. *See, e.g.*, *In re U.S.H. Corp. of New York*, 280 B.R. 330, 338–39 (Bankr. S.D.N.Y. 2002) (affirming bankruptcy court's power to enforce its own confirmation order and enforce injunctive provisions against parties bringing state court action).

43. The Reorganized Debtor's and Defendants' attorneys' fees and costs exceed $125,000 to date, and relate to evaluating and removing the Actions, preparing this Motion and Reply, conducting research, and moving to stay. Additional amounts will be incurred in connection with the hearing on the Motion and Plaintiffs' remand motions filed in Georgia bankruptcy court. As a sanction, the Court should order Plaintiffs to pay all of the Reorganized Debtor's and Defendants' attorneys' fees and costs related to the Actions and this Motion. Because fees will continue to be incurred in connection with this Motion and the proceedings in Georgia, we respectfully request the opportunity to make a fee submission after the hearing.

## **Conclusion**

WHEREFORE, the Reorganized Debtor and Defendants respectfully request that the Court enter the proposed order, attached to the Motion as Exhibit A, granting the relief requested therein and such other relief as the Court deems appropriate under the circumstances.

Dated: January 18, 2019
New York, New York

                    PAUL, WEISS, RIFKIND, WHARTON
                    & GARRISON LLP

                    */s/ Paul M. Basta*
                    Paul M. Basta
                    Lewis R. Clayton
                    Jacob A. Adlerstein
                    Claudia R. Tobler

                    1285 Avenue of the Americas
                    New York, New York  10019
                    Telephone:  (212) 373-3000
                    Facsimile:  (212) 757-3990
                    pbasta@paulweiss.com
                    lclayton@paulweiss.com
                    jadlerstein@paulweiss.com
                    ctobler@paulweiss.com

                    *Counsel for the Reorganized Debtor and Defendants*