UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re                                                                                    Chapter 11

    C.M. Wind Down Topco Inc.,                                  Case no. 17-13381

                Debtor.
-----------------------------------------------------------x

## RESPONDENTS' REPLY TO MOTION FOR CONTEMPT AND SANCTIONS

EJS Investment Holdings, LLC ("EJS"), WGH Communications, Inc. ("WGH"), and Eric J. Steinmann ("Steinmann" and collectively "Respondents"), as and for their reply to the motion ("Contempt Motion" [ECF 1084]) made by C.M. Wind Down Topco Inc. (the "Debtor") for the entry of an order finding Respondents in contempt for interposing complaints in the Superior Court of Fulton County Georgia against Mary Berner, Jeffrey Marcus, Brian Cassidy, Ross Oliver, and Crestview Partners, L.P. (the "Insiders"), respectfully represents as follows:

## PRELIMINARY STATEMENT

1. First, Respondents are not attempting to collaterally attack the Confirmation Order because Respondents claims against Insiders fall outside of the Confirmation Order and does not impact the Order.

2. Second, Respondents are not barred because the allegations are willful misconduct and gross negligence which are carved out of the releases and exculpations of the Confirmation Order. And EJS affirmatively opted out of the releases entirely.

3. Third, Insiders' responses show why Respondents' lawsuits should be allowed to go forward and why discovery is necessary. The very nature of the allegations are the acts that would not be obvious to third-parties and Respondents have only been able to put together

1

pieces of the puzzle without discovery. It was not until after the confirmation that Respondents learned that board members were being excluded. Respondents are confident that where there is smoke there is fire and through discovery Respondents will find additional information in support of its causes of action against Insiders. Debtor is not a party to the lawsuits, only the Insiders individually.

4. Finally, Insiders' bullying tactics continue to attempt to violate Respondents' rights. Respondents have brought claims against Insiders in good faith in their individual capacity.

**REPLY**

**I.    Respondents' Georgia Actions Fall Outside the Plan and are Not Barred**

5. EJS and WGH, in their capacity as bondholders, brought a lawsuit in Georgia State Court for various causes of action against Insiders individually, which was improperly removed to Georgia Bankruptcy Court. While Steinmann, as a shareholder, brought a lawsuit in Georgia State Court for various causes of action against Insiders individually. Debtor and Reorganized Debtor are not parties to those lawsuits. Both lawsuits allege Insiders committed gross negligence and willful misconduct. (Debtor and Insiders' Reply ("Debtors Reply"), ECF 1109 Ex. A & B).

6. Section VIII.E of the Confirmation Order specifically excepts from the release any claims related to any act or omission that is constitutes "actual fraud, gross negligence, or willful misconduct." (Motion to Enjoin and Hold in Contempt ("Motion"), ECF 1084, Ex. B, pp. 40-41).

7. There must be a determination whether Insiders' actions rise to the level of gross negligence and willful misconduct to determine whether the releases apply. Respondents should, therefore, be allowed to continue their lawsuits in Georgia.

8. The lawsuits in Georgia do not involve the Debtor or the Confirmation Order itself, any determinations on liability and damages would be related only to the Insiders directly and would not affect the Debtor or Reorganized Debtor. *See* O.C.G.A. §§ 7-1-104; 14-2-830; 14-2-842.

9. Insiders, through Debtor's counsel, seek to shield examination of their potential independent wrongdoing which was not known to Respondents or this Court during the confirmation process by arguing that Respondents seek to collaterally attack this Court's Plan. That is incorrect as the Plan is irrelevant to Respondents' lawsuits which, incidentally, is also why the Georgia Bankruptcy Court has no jurisdiction over the lawsuits and Remand in that jurisdiction is appropriate.

10. Similarly, the exculpation provision in Section VIII.G of the Plan is inapplicable here where the lawsuits involve allegations of gross negligence and wrongful misconduct. (Motion, ECF 1084, Ex. B. pp. 42-43). In fact, the only way to successfully bring a cause of action for Breach of Fiduciary Duty in Georgia is to show gross negligence.

11. As VIII.E and VIII.G do not apply to Respondents the injunction of VIII.H does not apply. (Motion, ECF 1084, Ex. B. p. 42). Furthermore, while all Respondents are excepted from the release, exculpation and injunction provisions because their lawsuits allege willful misconduct and gross negligence by Insiders, respondent EJS affirmatively opted-out of the releases and is even more squarely outside of the Plan. (Respondents Objection, ECF 1095, Ex. C)

12. For Steinmann, bankruptcy courts have held that failing to return a ballot is not sufficient manifestation of consent to third-party releases. *In re Washington Mutual, Inc.*, 442 B.R. 314, 355 (Bankr. D. Del. 2011) (citing *In re Zenith*, 241 B.R. 92, 111 (Bankr. D. Del 1999)). A shareholder receiving nothing for his stock cannot be considered to have sufficiently manifested consent to third-party releases. Therefore, sections VIII.E, VIII.G, and VIII.H should not apply to Steinmann generally as well.

## II.  Insiders and Debtor's Responses show why Discovery is Needed

13. Debtors and Insiders acknowledge that the Restructuring Committee involved Mary Berner and five independent directors, but Respondents contend that Crestview held two of those five seats, so between themselves and Berner, they held more than half of the committee and could influence the others. (Debtors Reply, ECF 1109 ¶ 16).

14. Crestview lost its equity position in Cumulus. But Respondents contend it was working on a separate transaction for the purchase of a large part of Voya had greater value. *See* paragraph 23 below. Respondents contend Crestview and Oliver and Marcus also received the benefit of releases through the Plan. Discovery would help determine if there is a conflict that should have been disclosed.

15. Furthermore, Debtor and Insiders admit that board members were being excluded. (Debtors Reply, ECF 1109 ¶ 31). However, Respondents contend a poison pill had already been put in place which would have prevented Mr. Dickey's brother from providing additional money. (Debtors Reply, ECF 1109, Ex. A ¶ 29 of Am. Compl). Discovery into the reasons behind excluding board members could also lead to further disabling conflict or other wrongdoing alleged by Respondents.

4

16. Debtor and Insiders argue that certain objections were not made during plan hearings, but Respondents contend that they did not understand the full picture until much later. But Respondents contend that it was not until post-confirmation that they heard from a board member that he was being excluded from meetings. Then they came to believe that evidence existed that Insiders may have committed gross negligence and willful misconduct, which would explain why the Insiders appear to have blocked new money from entering the company and instead held exclusive board meetings to ensure a Bankruptcy filing to benefit the Term Loan lenders. Respondents contend that they should be allowed discovery on whether Crestview Partners and aligned board members received some other consideration.

18. Similarly, it was not until the Confirmation hearing when the SEC objected to the releases which had value as consideration, that Respondents contend that they could piece together that the Insiders who prevented new investment money were contemporaneously engaged in lucrative business dealings with at least one Term Loan lender and filed a RSA that gave them liability protections. Discovery would allow Respondents and the court to see the full extent of the motivations and conflicts of Insiders.

19. Debtor and Insiders assert that there is no conflict of interest for Marcus or Oliver by reciting an unpublished test from Delaware Chancery Court. (Debtors Reply, ECF 1109, ¶ 18). Without discovery and testimony, Respondents cannot be sure of the reasoning behind Marcus and Oliver's actions. However, Respondents have alleged that Marcus and Oliver expected to derive a financial benefit from the restructuring plan which does not devolve on the corporation or all stockholders generally. Debtors Reply, ECF 1109 Ex. A & Ex. B. Respondents contend that Marcus and Oliver received certain releases and exculpations of liability from those parties that consented to the Plan which other stockholders did not receive, along with profits from

5

side deals with a Term Loan lender. (Motion, ECF 1084, Ex. B. p. 39-42; Debtors Reply, ECF 1109, Ex. A & Ex. B).

20. Respondents are trying to gather evidence surrounding suspicious side deals contend involving Insiders and Voya Financial made whereby the Insiders made money on Voya marketed investment funds holding stock in the newly reorganized Cumulus. Respondents contend that Cumulus Quarterly reports of Voya funds reporting Cumulus as the largest driver of growth were not released until June 2018. And those quarterly reports had web presence only after the bankruptcy from June 2018 to September 2018. Respondents are gathering information on Crestview subsidiary Victory Financial. It manages many of the investment funds offered by Voya. Respondents believe that Victory Financial manages many Cumulus Media term lender Voya marketed funds and does a lot of business through Voya. Respondents contend Crestview was preparing a public offering of Victory Financial contemporaneous with the Cumulus bankruptcy to have occurred in June 2018, shortly after the emergence of Cumulus Media from bankruptcy. And that Voya subsequently reported large profits in funds from the emergence of Cumulus from bankruptcy.

21. Respondents now contend further that Crestview may have purchased part of Voya through its subsidiary Venerable, and that the formation of Venerable involved another term lender, JP Morgan. Without discovery, Respondents can only search public records. Allowing discovery on these issues would allow Respondents to determine in part whether and to what extent Insiders were enriched through a side deal.

22. Paragraph 22 of Debtor and Insiders' Reply is misleading. The ad hoc group of term loan lenders' (the $870 million) primary argument was that their interest rate was not sufficient and that is why they supported the Plan. But Respondents are not arguing that Voya

6

dictated the Debtor's Plan. Respondents claim that Crestview, by and through Marcus and Oliver, dictated the Debtors Plan in conjunction with Mary Berner through improper board meetings, that they obtained releases in exchange for support of the RSA and the like and were incentivized to do that to the benefit of Voya as they were simultaneously negotiating equity interest in Voya or some subpart thereof. (*See generally* Debtors Reply, ECF 1109, Ex. A & Ex. B). Respondents assert that Mary Berner was incentivized to participate to be personally enriched in an amount greater than the Management Incentive Program amount that had been negotiated in a work out with Bondholders previously. (Debtors Reply, ECF 1109, Ex. A at ¶¶ 15-34 & Ex. B at ¶¶ 17-34).

23.     In a press release dated December 21, 2017 the Insiders note that the investor group was "led" by Crestview Partners, among others, to purchase a 23% stake in a newly formed company called Venerable Holdings, to purchase a $35 billion business from Voya. (Debtors Reply, Ex. A, p.130 (exhibit C to Amended Compl)). This was described as a landmark deal by industry publications to benefit the owners in Venerable Holdings. Respondents contend the only explanation for the Insiders to block new money coming into Cumulus, or for holding secret meetings, was to ensure they authorized the bankruptcy so the Term Loan lenders would end up owning the emerging Company. And the only reason the Insiders would allow this was the transaction with Voya. Respondents contend that it doesn't matter that they owned 2.8% of the Term Loan, or approximately $47 million. Respondents contend that what matters is that by agreeing to this deal they ensured that the Term Loan would get the company at the expense of the stockholders of which Crestview was one, but Crestview was the only stockholder receiving something else in consideration which was the transaction with Voya. Respondents contend it is incorrect to say that Respondents are implying that Voya was to receive 2.8 cents on the dollar of additional recovery on the Term Loan. What Respondents contend is that Crestview was taking a

7

23% position in a $35 billion transaction that they were incentivized to simultaneously get done while putting Cumulus into bankruptcy. Respondents contend Insiders knew Voya owned the Term Loan going in these 2017 negotiations and they did everything to the benefit of Voya (the Term Loan) at the detriment of all other stockholders and to the detriment of all Respondents.

### III.   Insiders Attempt to Violate Respondents' Rights

24.   Respondents filed lawsuits in good faith to hold Insiders accountable for their wrongful conduct, independent of the Debtor or Reorganized Debtor. Liability and damages from those lawsuits will not affect Debtor or Reorganized Debtor and are outside of the Confirmation Order as detailed above.

25.   However, Insiders have attempted to use the resources of Debtors' counsel to overwhelm Respondents with legal maneuvering. Insiders have avoided answering Respondents' complaints by removing Respondents lawsuits from Georgia state court in Fulton County, Georgia to the Bankruptcy Court for the Northern District of Georgia. Upon removal, rather than answering, Insiders filed Motions to Stay.[1] The only theory for removal is that the Plan may apply and therefore should be removed to the bankruptcy court.

26.   Respondents filed Motions for Remand arguing that remand was proper and furthermore arguing that mandatory abstention applied.[2]

---

[1] *EJS Investment Holdings, LLC et al. v. Mary G.Berner, et al.*, C/A. No. 18-05341-pmb, ECF No. 3 (Bankr. N. D. Ga., Dec. 26, 2018); *Eric J. Steinmann v. Mary G. Berner, et al.*, C/A. No. 18-05342-pmb, ECF No. 3 (Bankr. N. D. Ga., Dec. 26, 2018).
[2] *EJS Investment Holdings, LLC et al. v. Mary G.Berner, et al.*, C/A. No. 18-05341-pmb, ECF No. 7 (Bankr. N. D. Ga., Jan. 14, 2019); *Eric J. Steinmann v. Mary G. Berner, et al.*, C/A. No. 18-05342-pmb, ECF No. 7 (Bankr. N. D. Ga., Jan. 14, 2019).

27.     Insiders further maneuvered to delay a hearing on the Motions to Stay and Motions for Remand by filing an emergency motion with the court that had to be reviewed and opposed.[3]

28.     Insiders have made many unnecessary and costly filings in an attempt to overwhelm Respondents who filed lawsuits in good faith against Insiders in their individual capacities.  The award of monetary sanctions against Respondents for Insiders unnecessary fillings and billings would be a material injustice.

## CONCLUSION

WHEREFORE, Respondents respectfully request that the Court deny Reorganized Debtor and Insiders' Motion and determine that Respondents lawsuits fall outside of the scope of the Plan and should proceed in Georgia state court since there is no diversity here, and there is no federal question related to the lawsuits.

Dated:  New York, New York
        February 15, 2019

                                           **BACKENROTH FRANKEL & KRINKSY, LLP**
                                           Attorneys for the Respondents

                                       By: _____
                                                   800 Third Avenue
                                                   New York, New York 10022
                                                   (212) 593-1100

---

[3] *EJS Investment Holdings, LLC et al. v. Mary G. Berner, et al.*, C/A. No. 18-05341-pmb, ECF No. 10 (Bankr. N. D. Ga., Jan. 23, 2019); *Eric J. Steinmann v. Mary G. Berner, et al.*, C/A. No. 18-05342-pmb, ECF No. 10 (Bankr. N. D. Ga., Jan. 23, 2019).

9